WHIPPLE, C.J.
|sIn this suit to enforce obligations arising out of four promissory notes, the plaintiff, BancorpSouth Bank, appeals three judgments rendered in connection with discovery disputes that ultimately resulted in the trial court dismissing Baneorp-South’s claims, striking its defenses to a reconventional demand, and awarding attorney fees and expenses in the amount of $225,000.00. We affirm in part, reverse in part, vacate in part, and remand.
FACTS AND PROCEDURAL HISTORY
The subject promissory notes are payable to BancorpSouth by Kleinpeter Trace, L.L.C., an entity formed by Charles Wallace Gladney and James G. Tanner, III, and are more particularly identified as follows: (1) Bank Loan No. 260000417336 for the principal sum of $1,999,100.00 and bearing interest at a variable rate (“note one”); (2) Bank Loan No. 260000422082 for the principal sum of $1,999,900.00 and bearing interest at a variable rate (“note two”); (3) Bank Loan No. 260000542208 for the principal sum of $799,767.82 and bearing interest at a variable rate (“note three”); and (4) Bank Loan No. 260000481694 for the principal sum of $2,010,250.00 and bearing interest at a variable rate (“note four”). The promissory notes were secured by multiple indebtedness mortgages on tracts of immovable property owned by Kleinpeter Trace. In addition to the mortgages, Gladney guaranteed the repayment of notes one, two, and three, and Tanner guaranteed the repayment of all four notes.
BancorpSouth filed this proceeding against Kleinpeter Trace, Gladney, and Tanner on October 12, 2010, seeking to collect the amounts owed under notes three and four, to foreclose on the mortgages securing those notes by ordinary process, and to enforce the guaranty obligations of Gladney and Tanner.[1] 14Kleinpeter Trace and Gladney responded to the bank’s petition by filing an answer, exceptions, and a reconventional demand, all of which were subsequently supplemented and amended.[2] Tanner has not filed any responsive pleadings.
While the claims and defenses in this litigation are extensive, Gladney and Klein-peter Trace essentially contend that they are not liable for notes three and four because Tanner, BancorpSouth, and the bank’s president, Larry Denison, engaged in fraudulent acts with regard to those notes. They claim that the bank, with the *619 assistance and agreement of Denison, permitted Tanner to draw money on note three for his personal use without any consideration or benefit to Kleinpeter Trace. They also allege that note four originated without their knowledge in an unauthorized attempt by BancorpSouth to collateralize unrelated Tanner loans in the amount of $2,000,000.00 that involved another project (referred to herein as “the Bluffs”) which had no connection to Klein-peter Trace. According to the allegations, BancorpSouth and Tanner used Kleinpeter Trace’s property as collateral for the unrelated Tanner loans with the expectation that a pending sale of Kleinpeter Trace’s property would result in sufficient funds to pay Tanner’s loans for both the Bluffs and note four. When the anticipated sale did not occur, Gladney eventually discovered the allegedly fraudulent transaction. In addition to denying any liability for notes three and four for those reasons, Gladney and Kleinpeter Trace are pursuing claims for damages against BancorpSouth,' Tanner, Denison, and the bank’s insurers.
Our review of the procedural history in this litigation will focus on the discovery motions that are central to this appeal. On May 25, 2012, Kleinpeter Trace and Gladney filed a motion to compel discovery responses and a motion to impose sanctions in connection with interrogatories and requests for production of [^documents sent to BancorpSouth on October 20, 2010, November 19, 2010, and October 28, 2011. The defendants asserted that Bancorp-South had destroyed or suppressed relevant evidence and had persistently refused to fully answer discovery and make deponents available. For support, Gladney and Kleinpeter Trace cited the belated production of a March 28, 2007 email from Tanner to Denison requesting a $2,000,000.00 loan in the name of Kleinpeter Trace to pay off or restructure various debts of Tanner with the bank involving the Bluffs project (the “Tanner/Denison email”). Kleinpeter Trace and Gladney alleged that they were not aware of the Tanner/Deni-son email until the deposition of Denison on January 12, 2012, and although the document was within the scope of the original October 20, 2010 discovery request, they were not provided a copy of the email until the day following the Denison deposition.
As additional support for their motions, Gladney and Kleinpeter Trace relied upon the late production of Denison’s “desk file” on April 3, 2012, which was after Denison’s deposition and less than 24 hours before the scheduled depositions of several bank employees, including Mark Bagwell, the loan officer who administered the Klein-peter Trace loans. The parties were left with no alternative but to continue the depositions, and the bank allegedly failed to cooperate in rescheduling the depositions. The defendants further cited the bank’s failure to produce any electronic emails and its failure to preserve electronic data, even though BancorpSouth knew as early as July of 2010 that litigation over notes three and four was imminent. The motions also asserted the bank’s failure to produce relevant documentation concerning the subject loans, contending that the bank was relying on the allegedly baseless proposition that the documents were privileged and protected under LSA-R.S. 6:333(1X2).
The defendants also pointed out in their motions the bank’s destruction of Melissa Abreo’s daily work file (the “Abreo file”). Abreo was an assistant to [^Bagwell, and her affidavit, which referenced documents in her file, was offered by BancorpSouth in support of a motion for summary judgment filed on February 22, 2012. After the summary judgment motion was filed, the bank notified the defendants that the Abreo file had been inadvertently de *620 stroyed. Additionally, Gladney and Klein-peter Trace asserted that the bank had refused to provide a copy of its insurance policies on the basis that it would not provide the information until the trial court ruled on its peremptory exception raising the objection of prescription.
On the same date the defendants filed their motions, May 25, 2012, BancorpSouth filed a motion seeking a protective order prohibiting Kleinpeter Trace and Gladney from discovering documents reflecting the bank’s internal evaluation, analysis or review of any loans, extensions of credit or related collateral, including the bank’s internal evaluation, analysis or review of the loan transactions at issue in this case. BancorpSouth claimed that it was entitled to the protective order because the information was not discoverable or admissible in evidence pursuant to LSA-R.S. 6:333(I)(2). The bank also sought an order requiring Kleinpeter Trace and Gladney to return any documents protected under LSA-R.S. 6:333 that had inadvertently been produced during the course of discovery.
A hearing on the parties’ motions was held on September 10, 2012. The trial court issued an oral ruling that same day that was reduced to a written judgment signed on October 23, 2012 (“October judgment”). The October judgment denied the bank’s motion for protective order and granted the defendants’ motion to compel, awarding costs and fees to Kleinpeter Trace for the preparation and filing of the motion to compel in the amount of $750.00. The judgment further ordered Bancorp-South to produce the following documents and information:
I7I. The identity and policies for [Ban-corpSouth’s] insurance carriers;
2.Any and all documents previously withheld or redacted by [Bancorp-South] under La. R.S. 6:333(I)(2);
3. The documents referenced in Ms. Abreo’s March 12, 2012 Affidavit;
4. Mr. Bagwell’s complete files excluding his personnel file maintained by [BancorpSouth];
5. Allow for the re-deposition of Mr. Larry Denison and other [Bancorp-South] employees;
6. Provide Kleinpeter with specific information as to exactly what efforts [BancorpSouth] has made to obtain the backup electronic files and preserve electronic communications with a litigation hold.
The October judgment also provided that the motion for the imposition of sanctions was “reserved” by the court, to be heard separately after subsequent discovery efforts by the defendants and after the bank responded to the orders contained in the October judgment. According to the judgment, the court would then “make a determination on possible sanctions, including but not limited to the imposition of costs, attorney’s fees, adverse presumption, spoliation of evidence, dismissal of claims, or any other sanction available under La. C.C.P. art. 1471.”
On November 8, 2012, Kleinpeter Trace and Gladney filed a renewed motion to compel discovery responses from Bancorp-South, along with a motion to impose sanctions and for contempt of court. In addition to adopting and renewing the assertions presented in their prior motion to compel, the defendants sought to have BancorpSouth held in contempt of the' October judgment “based on new and troubling facts not known at the time of the September 10, 2012 hearing.” According to Kleinpeter Trace and Gladney, on October 25, 2012, BancorpSouth’s counsel revealed, for the first time, that the bank had maintained in its possession thousands of discoverable emails and electronic docu *621 ments dating back to 2005, that the bank had known of the existence of the emails since May of 2012, and had 1¡¡“intentionally misled” the defendants and the trial court about the existence of the documents. The defendants requested that the trial court strike the bank’s affirmative defenses and exceptions to the defendants’ re-conventional demand, dismiss the bank’s claims against the defendants, or, alternatively, apply a negative factual inference on all evidence destroyed or suppressed by the bank. Additionally, the defendants sought an award . of costs and attorney fees incurred as a result of “restarting this case two years after commencement as mandated by La. C.C.P. art. 1471(C).”
In opposition to these motions, Bancorp-South stated that the additional information referred to by the defendants had been identified in an expanded data search of the bank’s electronic files in April of 2012, and that the results of that search were stored on a disk that was delivered to the bank’s counsel on May 3, 2012. Counsel for BancorpSouth represented that the information on the disk was under review in compliance with the October judgment and that information on the disk that had already been reviewed and redacted, as necessary, had been produced to the defendants on November 9, 2012, November 27, 2012, and December 7, 2012.
The trial court held a hearing on the renewed motion to compel on December 17, 2012, and issued an oral ruling providing:
I do want a complete copy, full, unedited, unredacted copy, of the disk presented to the Court before week’s end. I am going to give BancorpSouth 10 days to completely respond to what I think initially was a 2010 discovery request, and it is for those emails ... which although not physically in Bancorp-South’s hands for this last two plus years based on the subsequent production was ascertainable during this period of time and has still not been produced. In default of a full and complete response, the Court will then grant movers’ request to dismiss the main demand and to strike the affirmative defenses' But prior to doing that, [the bank will have the] opportunity to respond. And I understand this may appear to be a short window, but I’m backing this window up to May 2012 when this disk was ultimately turned over from Bancorp-South to counsel. The Court is also of the opinion, based on what has transpired since the September hearing, to reconsider the request for an adverse presumption regarding Ms. | aAbreo’s file. The Court will grant that request and ... an adverse presumption as to the contents of Ms. Abreo’s daily work file will be imposed. After production, the Court will then take up a full hearing on the issue of sanctions under [Louisiana Code of Civil Procedure article] 1471, which will include attorney’s fees incurred and costs incurred, both court costs, deposition costs, regarding discovery and discovery-related motions to date.
On January 8, 2013, the trial court signed a written judgment in accordance with its oral ruling (the “January judgment”) that granted, in part, the defendant’s renewed motion to compel and awarded costs and attorney fees associated with that motion. The judgment deferred the calculation of costs and fees “as to the amounts associated with the motion” until a subsequent evidentiary hearing on the request for sanctions. The January judgment then ordered BancorpSouth to produce the following documents and information:
1. [BancorpSouth] shall deliver a complete, unedited, un-redacted copy, of the *622 disk containing the estimated 5.2 gigabytes of electronic documents (the “Disk”) to the Court on or before December 21, 2012;
2. BancorpSouth shall produce to Kleinpeter Trace all responsive, non-privileged electronic documents stored or otherwise maintained on the Disk on or before January 7, 2013.
The January judgment further provided that if BancorpSouth failed to produce all responsive, non-privileged documents stored on the disk on or before January 7, 2013, then the court would grant the request to dismiss the bank’s main demand and the request to strike the bank’s affirmative defenses to the defendant’s recon-ventional demand. The judgment also ordered “that if there is a problem regarding the production ... then the Court may determine it necessary to appoint a special master or independent third-party to review and report to the Court on the contents of the Disk, subject to the terms and conditions of a Protective Order of nondisclosure.” Additionally, the judgment addressed the Abreo file and directed that an adverse presumption instruction be given to the jury as to the contents of the file. Finally, the judgment reserved any ruling on the motion for sanctions until after BancorpSouth’s production required by the judgment, at which time the court hnwould notice a full evidentiary hearing on the issue of sanctions under Louisiana Code of Civil Procedure article 1471, which, according to the judgment, would “include attorney’s fees incurred and costs incurred, both court costs, deposition costs, regarding discovery and discovery-related motions to date and such other sanctions as the Court may find appropriate.”
On January 7, 2013, BancorpSouth filed a notice of compliance representing that it had complied with the trial court’s order by delivering a complete, unedited, un-redacted copy of the disk to the court on December 21, 2012, and that it had produced to counsel for the defendants all remaining responsive, non-privileged electronic documents stored or otherwise maintained on the disk. Kleinpeter Trace and Gladney subsequently filed an objection to the notice of compliance contending that the bank’s production was not in compliance with the January judgment; however, the objection complained primarily about the bank’s responses to discovery propounded after the December, 2012 hearing that was not the subject of the January judgment.
The trial court held an evidentiary hearing on the motion for sanctions on May 7, 2013, and heard testimony from several witnesses, including Taylor S. Carroll, counsel for BancorpSouth; Christy I. An-dra, the regional e-discovery specialist employed by counsel for BancorpSouth; John I. Foster, the information security administrator for BancorpSouth; and Gavin W. Manes, an expert in computer forensics and e-discovery retained by counsel for BancorpSouth.
According to Carroll, the events leading up to the development and delivery of the disk began in 2012 during depositions when the parties realized that the Tanner/Denison email had not been produced, although at the time both BancorpSouth and its counsel thought that it had been produced. Realizing that there was a “disconnect” in the production, Carroll and a bank employee arranged for the bank’s internet technology (“IT”) department to conduct a second or | nsupplemental search of the bank’s electronic files for additional bank employees, referred to as “custodians” for purposes of the data collection, and using additional search terms to search the collected data. The results of this search were copied to the disk delivered to Carroll’s office on May 3, 2012. *623 The disk was initially delivered to Andra, who then brought it to Carroll for his review. After loading the disk in a computer and opening it, Carroll observed what he described as a “root folder” with “nine different people listed, the four original custodians and the five that were added in the supplemental searches.” He clicked on the names and saw some irrelevant emails and other files that were in formats such as Word, PDF or Excel.
When Carroll was asked if he felt obligated at that point to report to the defendants’ counsel that he had a disk with some emails on it, he replied:
A. We had the competing [motions]. I didn’t. In hindsight, knowing where this kind of went, clearly, I would have said [to opposing counsel that] we’ve got some other documents that we think are covered by the protective order and we’re not going to give them to you, obviously, because we have our motion [for protective order] that’s pending, but we have some documents that need to be reviewed and turned over. I would not have told him we have a lot of emails. When I was done searching these files, Your Honor, I thought maybe we had maybe two dozen total e-mails from these non-custodians and they were all irrelevant. I mean completely irrelevant. So I came out of that thinking we’ve got no other e-mails to give to them. And the other documents that we would have are these what I’ll call standalone documents, these Excel, Word or PDF documents, that will need to be reviewed, but we need to get a ruling on whether or not these are even discoverable from the Court.
Q. Mr. Carroll, did you direct anyone to do a further review of the disk at that time?
A. No.
Q. Why not?
A. I was the only one who did that. I knew that the documents that I saw were what I saw. I knew they were covered by the privilege that we had asserted.
Q. Did you at that time appreciate the volume of data on the disk?
112A. Absolutely not.
Carroll did not look at the disk again prior to the September 2012 hearing on the bank’s motion for protective order and the defendants’ motion to compel. Because Carroll was handling another hearing in the case set for the same day involving the ranking of competing mortgages on the Kleinpeter Trace property, Amanda Messa, another attorney in his firm, was assigned to argue the discovery motions. Messa contacted Carroll the evening before the hearing to confirm that he had reviewed the disk, and Carroll advised her that he had reviewed it and that it contained only a handful of irrelevant emails and a list of stand-alone documents that he thought were subject to the LSA-R.S. 6:333 privilege.
During the September 2012 hearing on the motions, counsel for the defendants presented copies of emails that had not been produced digitally or in the “source” form by the bank. This prompted Messa to try and “source” the emails, which lead to her review of the disk that same day following the hearing. Carroll described the ensuing events as follows:
A.... I received an e-mail from Ms. Messa at 4:57 p.m. that afternoon of the hearing on September 10 that said, [“We] need to talk. We have an issue. There are e-mails. [”] My response to that was at 7:11 p.m. that same night, and my response was [“W]hat e-mails are you talking about? I didn’t know that we were sitting on e-mails,[”] I think was word for word my response. *624 She responded the next morning, saying, [“E]-mails that are on the disk.[”] At which point I said, [“H]ow is that possible? I’ve looked at the disk, the emails.[”] At some point, either the night of the 10th or the morning of the 11th, Ms. Messa and Ms. Andra, working in concert, figured out my error on looking at the e-mails and brought that to my attention.
Q. What did you do at that point?
A. I got them to show me what the problem was. Show me. I understood the error. It was an error, an honest error, but it was an error. I directed Ms. Andra that afternoon, I believe, or the next morning, either the 11th or the 12th, to immediately begin the review process so we could produce those documents.
Q. Did you call [opposing counsel] to tell them about the e-mails at that time?
11SA. Not at that time. On September 25, so I guess 10 days later or so from when we were talking about, Ms. Messa relayed that information to [opposing counsel] that we had electronic files that we were reviewing to be turned over....
Q. Why didn’t you call them?
A. I knew we were in the process of getting those e-mails to them, and I also — frankly, I had spent the entire week before dealing with the rule to rank [the competing mortgages,] and I was literally trying to dig out for a few days, especially now that this kind of error was out there. But I started on my end the ball moving towards the production immediately.[3]
Carroll and counsel for the defendants subsequently agreed to give certain information, such as emails, priority in the production and to defer production of customer reports until the end of the production because the “reports could not be more immaterial to this case.” When asked if there was any effort on his part to mislead the court with regard to the disk, Carroll replied, “Absolutely not. And, frankly, I wish it wasn’t the case because it certainly started this steamrolling towards where we are now.” Carroll later added:
Everyone else that has looked at this disk has not had the problem I did. I made a simple error. It’s not rocket science the way it was set up. It was a pallet of e-mails. I understand it now and the mistake wouldn’t be made again, but it was a simple honest mistake.
Carroll also testified that their estimate that the disk might contain as many as 500,000 documents was “way off because “[i]n reality ... [u]ntil the review was done, we couldn’t tell how many documents were on there because there are hyperlinks and things that aren’t going to quantify.” When they ultimately finished the review, “it was literally ... one to two banker’s boxes after you take out [the] duplicate documents that have been produced prior.”
The review and production of the disk information was further addressed in the testimony of Andra, the e-discovery specialist employed by counsel for Bancorp-South. Andra described the tedious process of reviewing, screening, | ^redacting, and producing the information and the development of privilege logs for the productions. The first production of information from the disk was in November of 2012 (which was actually the seventh production of documents by BancorpSouth in the case) and continued through the final pro *625 duction of information from the disk on January 7, 2013. Production of the emails was given priority, and three associates were brought in to assist in the work following the December 2012 hearing.
Andra also addressed the information obtained by Manes, the computer forensics and e-discovery expert who was retained after the December 2012 hearing to review the data preservation efforts made by the bank and to assist in locating an electronic version of the Tanner/Denison email. An-dra first learned that Manes may have been recovering additional information not .previously located when he forwarded 40 to 60 emails in electronic format to her on March 22, 2013. These emails included either Tanner or Denison as a sender or recipient, and Andra had not previously seen some of the emails. Andra began reviewing and screening the information located by Manes (the “Manes information”) on April 8, 2013. Although the Manes information contained duplicates, each document had to be reviewed to determine if it was a duplicate. Andra estimated that the Manes information contained 6,700 emails, which were still being reviewed and screened as of the May 2013 hearing. The reports included in the information were particularly time consuming and occupy 80 to 90 percent of the time involved in the production process. Andra anticipated the review and redaction process would be completed about four to six weeks after the May 2013 hearing.
Foster, the information security administrator for BancorpSouth, described the efforts he took to obtain and preserve electronic information that might be relevant to the litigation. In October of 2010, the audit department provided him 11fiwith the names of four bank officers to be used for the search, Janet Feig, Mark Herbst, Larry Denison, and Mark Bagwell, referred to by the technical term “custodians.” To collect data, Foster targeted the bank’s email exchange mailboxes for the custodians and the hard drives of the custodians’ computers. The hard drives themselves were not copied. Foster then searched the collected data using various search terms associated with the defendants. He followed the same procedure for the second search in March 2012 when additional search terms for searching the recovered data and additional custodians, including Abreo, James Stringer, and others, were added. Foster also confirmed that a litigation hold was never instituted in this case, but did not elaborate as to what a litigation hold entails.
Manes testified that the “Encase” system used by BancorpSouth to collect and store electronic data is a valuable forensics tool that is superior to all other methods. He described the collections by Bancorp-South as “one of the highest levels of collections I’ve seen in some time with my clients.” Once collected, the data has to be searched, and Manes utilizes tools for that task that are more advanced than those used by BancorpSouth. Manes did not review the search terms or methodology used by the bank to search the collected data in 2010 or 2012, but instead ran his own search based on his expertise. His search produced 6,500 documents, but he did not know how many of those documents were previously found and had already been produced by BancorpSouth. Manes was aware that Denison had a practice of double-deleting his emails on a daily basis, and double-deleted emails would not now be available because unallocated disk space for the custodians was not preserved.
Bagwell’s testimony concerned the printed copy of the Tanner/Denison email that was in the loan file. He testified that in 2007 Denison was his boss. When Deni-son received the email from Tanner re *626 questing the $2,000,000.00 loan, | lfiDenison printed and delivered the email to Bagwell so that Bagwell could process the loan. After the loan was processed, Bagwell put the printed email in the file packet.
At the conclusion of the presentation of evidence at the May 2013 hearing, the trial court ruled from the bench in favor of Gladney and Kleinpeter Trace, dismissing BancorpSouth’s claims against them and striking the defenses and exceptions asserted by the bank in response to the reconventional demand. In extensive oral reasons, the trial court began by reviewing the events that transpired before the entry of the October judgment, including the belated production of the Tanner/Denison 2007 email, the destruction of the Abreo file, the failure to implement a litigation hold, which the court felt should have been implemented as early as July of 2010, and the loss of emails between the initial data search in October of 2010 and the second search in March of 2012.
With respect to the failure to disclose the disk that was the subject of the January judgment, the court expressed, “I have no doubt whatsoever as to the veracity of Mr. Carroll’s testimony ... [Tjhere was a simple breakdown by Mr. Carroll as to his review and his appreciation of what the disk contained.” The court questioned only why more was not done to confirm the contents of the disk and that “probably in hindsight [Mr. Carroll] should have [given] ... opposing counsel a heads up as to the disk even assuming it may not have produced additional documentation.” The court further found, “I do not believe that Ms. Messa in any way intentionally attempted to mislead the Court as to the volume of documents on that disk.”
Citing the belated production of Stringer’s “second desk file” on January 14, 2013, the trial court stated that “documents are still being withheld and produced late as they’re going through this review.” The trial court then concluded:
|17I go back and I look at the litany of discovery issues that I just alluded to. Clearly, each incident standing alone I don’t think would be a sufficient basis for the imposition of severe sanctions, but when they’re viewed collectively, I think that they do rise to the level of an extreme pattern of abuse.... I feel the record in this case reflects willful failure to comply with discovery on the part of the plaintiff, and when I say plaintiff, I mean the bank.... I think the actions have delayed this litigation. We’re approaching three years in and documents that should have been produced back in 2010 are just now being turned over, and some of them still have not been turned over.... I could not determine a lesser sanction that would be appropriate in this case.... Having said that, it’s the Court’s opinion that the only appropriate sanction in this case is to grant the relief asked by the defendants — and when I say defendants, this only applies to Kleinpeter Trace and to Mr. Glad-ney — is the dismissal of the main demand and the striking of the defenses to the reconventional demand.... I do want to make sure that this record clearly reflects that the Court’s decision in this regard is falling on the shoulders of the client. I do not find fault in the conduct of the plaintiffs counsel.
The trial court further found that Klein-peter Trace and Gladney were entitled to an award of attorney fees and costs under Louisiana Code of Civil Procedure article 1471, but deferred a ruling on the amount until a later date.
The trial court signed a written judgment (the “May judgment”) that granted the renewed motion to compel and the motion for sanctions and contempt, dismissed BancorpSouth’s claims against *627 Kleinpeter Trace and Gladney, and struck the defenses and exceptions asserted by BancorpSouth in response to the defendants’ reconventional demand. The signed May judgment also awarded attorney fees and expenses in favor of Kleinpeter Trace and Gladney and against the bank in the amount of $225,000.00. The judgment did not expressly provide that the attorney fee award was granted as a sanction pursuant to Article 1471, as the court had stated in its oral reasons, or whether it was granted under Article 1469(4) in connection with the renewed motion to compel, which had been previously granted in the January judgment.[4] The May judgment also or-deredJj^BancorpSouth to pay all costs of the proceedings for the September 10, 2012, December 17, 2012, and May 7, 2013 hearings.
BancorpSouth suspensively appealed, contesting the October, January, and May judgments.[5] By order of the trial coui’t signed on July 26, 2013, all proceedings in the trial court were stayed pending this appeal. Kleinpeter Trace and Gladney answered the appeal and seek an additional award of attorney fees and costs for defending the appeal and request that the stay order be lifted at the conclusion of the appeal.
On appeal, BancorpSouth contends that the trial court: (1) erred in denying the bank’s motion for a protective order; (2) abused its discretion in granting the motion to compel discovery filed by Kleinpeter Trace and Gladney; (3) erred in imposing sanctions for the putative failure of the bank to implement a litigation hold and other perceived discovery failures preceding the October judgment; (4) erred in creating an adverse presumption for the destruction of the box containing the Abreo file; (5) erred in finding that the bank willfully failed to comply with the terms of a discovery order, and was thus subject to sanctions under LSA-C.C.P. art. 1471; and (6) abused its discretion by ordering as a sanction the dismissal, with prejudice, of the claims asserted by the bank in its main demand, and the striking |19of the bank’s defenses and exceptions to the reconventional demand, in addition to awarding Kleinpeter Trace and Gladney $225,000.00 in attorney fees and costs.
*628 LAW AND ANALYSIS
A. Motion for Protective Order and Motion to Compel
In its first two assignments of error, BancorpSouth contends that the trial court erred in denying its motion for protective order under LSA-R.S. 6:333 and in granting the motion to compel, wherein the court ordered BancorpSouth to produce “any and all documents previously withheld or redacted” under LSA-R.S. 6:333(I)(2). Resolution of these assignments of error requires the interpretation of LSA-R.S. 6:333.
The interpretation of a statute is a question of law, and the appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. Clements v. Folse, ex rel. Succession of Clements, 01-1970 (La.App. 1st Cir.8/14/02), 830 So.2d 307, 312, writ denied, 02-2328 (La.11/15/02), 829 So.2d 437. The starting point for the interpretation of any statute is the language of the statute itself. Cat’s Meow, Inc. v. City of New Orleans, through Department of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13.
| ^Louisiana Revised Statute 6:333 provides the exclusive method for obtaining records from a bank. Bourgeois v. Bourgeois, 13-0038 (La.App. 1st Cir.9/13/13), 135 So.3d 1, 4 writ not considered, 13-2439 (La.1/27/14), 130 So.3d 954. Louisiana Revised Statute 6:333(B) sets forth the following general prohibition: “Notwithstanding any other provision of law to the contrary, ... no bank or its affiliate shall disclose any financial records to any person other than the customer to whom the financial records pertain, unless such financial records are disclosed” in accordance with the other provisions of the statute. (Emphasis added). Thus, the scope of protection provided by the statute is limited to the production of financial records to someone “other than the customer to whom the financial records pertain,” meaning a third party. The statute then identifies three permissible methods for the disclosure of financial records: (1) a “disclosure demand,” (2) a written request or authorization, and (3) as “otherwise permitted” by the statute. LSA-R.S. 6:333(B)(1)-(3).
A “disclosure demand” includes interrogatories and requests for production of documents. LSA-R.S. 6:333(A)(6). A bank may disclose financial records pursuant to a disclosure demand if certain requirements are satisfied, including personal service of the demand on the customer or his counsel at least fifteen days before the production, and no written notification to the bank thereafter that the customer has taken legal action to enjoin the disclosure. See LSA-R.S. 6:333(C).
Under the second authorized disclosure method, a bank may disclose a customer’s financial records when the customer or his attorney authorizes the disclosure through a signed statement that, among other requirements, identifies the person to whom the disclosure may be made and reason *629 ably identifies the records to be disclosed. LSA-R.S. 6:333(E).
The third basis for disclosure of records, “as otherwise permitted” by the statute, is a reference to LSA-R.S. 6:333(F) which begins, “The following 12i disclosures by a bank or any affiliate are hereby specifically authorized and, except as otherwise provided in this Subsection, nothing in this Section shall prohibit, restrict, or otherwise apply to....” (Emphasis added). This introductory language is then followed by a list of eighteen approved disclosures, ranging from disclosures to investors and regulatory agencies to disclosures to “any person having any ownership or joint interest in an account to which the financial records pertain, [or] any person directly or indirectly obligated to the bank on an extension of credit to which the financial records pertain.” See LSA-R.S. 6:333(F)(9) This language again confirms that the statute does not “prohibit, restrict, or otherwise apply to” a bank’s disclosure to an account holder of financial records that pertain to his own account. See Bryan v. Case Credit Corp., 37,256 (La.App. 2nd Cir.6/25/03), 850 So.2d 954, 958 (former spouse who “had an ownership or joint interest” in a tractor that was the subject of a credit account was entitled to obtain financial information from the bank pertaining to that account pursuant to LSA-R.S. 6:333(F)(9)).
In support of its motion for protective order, BancorpSouth relies upon LSA-R.S. 6:333(I)(2), which provides:
Notwithstanding any law to the contrary, all financial records prepared by or for the bank in connection with the bank’s evaluation, analysis, or review of any loan or other extension of credit or of any collateral security therefor or reserve therefor shall be confidential and shall not be discoverable or admissible in evidence in any civil action pertaining to or arising out of any such loan, other extension of credit, or the collateral security therefor.
The bank argues that it does not have to produce any financial records prepared by or for the bank “in connection with the bank’s evaluation, analysis, or review of any loan or other extension of credit,” which the bank construes to mean its “internal loan reviéw documents.” Kleinpeter Trace and Gladney counter that LSA-R.S. 6:333, when construed in its entirety, does not create a privilege that limits the disclosure of documents by the bank to its own customer. Alternatively, 122the defendants claim that if the statute does create a privilege, the bank waived it by producing documents subject to the privilege.[6]
While the language of LSA-R.S. 6:333(I)(2) is broad and appears to preclude the discovery of all financial records prepared by or for a bank in the evaluation or review of a loan, the provision cannot be read in isolation and must be construed with the remainder of the statute. See Bays v. Bays, 00-1727 (La.2/21/01), 779 So.2d 754, 757-758 (recognizing that statutory provisions should be construed along with the remainder of the statute in which it is contained). Construing LSA-R.S. 6:333 in its entirety, we find that the statute creates a duty of confidentiality in favor of a bank’s customers and protects the bank from liability when the statutory *630 safeguards are followed, and implicitly withdraws such protection when the prescribed procedures are not followed. See Burford v. First National Bank in Mansfield, 557 So.2d 1147, 1150-1151 (La.App. 2nd Cir.1990). Louisiana Revised Statute 6:333 contains no prohibition that limits or otherwise prevents a customer from obtaining financial records that pertain to his own account or loan. To the contrary, LSA-R.S. 6:333(F)(9) expressly provides that “nothing in [the statute] shall prohibit, restrict, or otherwise apply to” such a disclosure. BancorpSouth’s assertion that LSA-R.S. 6:333(I)(2) precludes a customer from obtaining “internal loan review documents” pertaining to his own account cannot be reconciled with the statute’s broad definition of “financial records,” to which a customer is entitled and which include:
any memorandum, writing, datum, compilation, entry, print, analysis, review, committee minute, internal or external audit report, or other document or record held by, or otherwise in the possession or under the control of, a bank which pertains in any way to a past or current customer or to such customer’s past or current relationship with the bank and all information contained therein or derived therefrom.
|23LSA-R.S. 6:333(A)(7) (emphasis added). This language is more than sufficient to include the information described in LSA-R.S. 6:333(I)(2).
Accordingly, construing these provisions together, we find that LSA-R.S. 6:333(I)(2) does not apply to a customer’s request for financial records that pertain to the customer’s account or loan. We find no error in the trial court’s denial of BancorpSouth’s motion for protective order and the granting of the motion to compel ordering the bank to produce all documents previously withheld or redacted by the bank under LSA-R.S. 6:333(I)(2), and we affirm those portions of the October judgment.[7]
B. Dismissal of BancorpSouth’s Claims and Striking of Defenses
In assignments of error three, five, and six, BancorpSouth contends that the trial court erred in dismissing the bank’s claims against Gladney and Kleinpeter Trace and striking its defenses to the defendants’ reconventional demand as sanctions for violations of the October judgment and the January judgment, arguing that: (1) the actions in question occurred before the entry of the judgments and therefore cannot be in violation of the judgments, and (2) BancorpSouth did not willfully fail to comply with the judgments. We agree.
Louisiana law distinguishes between the sanctions available for failure to comply with discovery requests and sanctions for disobedience of court-ordered discovery. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203; Walley v. Vargas, 12-0022 (La.App. 1st Cir.9/21/12), 104 So.3d 93, 102. Under LSA-C.C.P. art. 1469(A)(4), a party may seek a court order compelling a response to discovery, and if the order is granted, the mover may recover the reasonable costs and attorney fees incurred in obtaining the order. However, if a party “fails toj^obey an order to provide or permit discovery,” LSA-C.C.P. art. 1471(A) provides the court with the ability to impose more severe sanctions, including orders striking pleadings, dismissing the action or any part thereof, or rendering judgment by default against the *631 disobedient party. By its express terms, article 1471(A) grants these remedies only when a court order is in effect and a party has failed to obey the order. See MTU of North America, Inc. v. Raven Marine, Inc., 475 So.2d 1063, 1070 (La.1985) (“[i]f the court grants an order compelling discovery under [article] 1469, and that order is subsequently disobeyed, [article] 1471 authorizes the court to impose such sanctions as are just”); Walley, 104 So.3d at 103 (absent an order compelling production of plaintiffs’ automobile liability policy, there was no basis for the trial court to consider the fact of uninsured status to be established under article 1471); Kemp v. CTL Distribution, Inc., 09-0061 (La.App. 1st Cir.9/11/09), 2009 WL 3030740 (“The sanctions pursuant to article 1471 are not available in response to the original motion to compel, but rather come into play only after an order compelling discovery is granted and then subsequently violated.”).
Although the trial court has wide discretion in imposing sanctions for failure to. comply with discovery orders under article 1471, the Louisiana Supreme Court has cautioned that dismissal for a discovery violation is a draconian penalty that should only be applied in extreme circumstances. Hutchinson v. Westport Insurance Corporation, 04-1592 (La.11/8/04), 886 So.2d 438, 440; Horton, 635 So.2d at 203. A sanction of dismissal involves property rights; therefore, such a sanction should be reserved for the most culpable conduct. Horton, 635 So.2d at 203; Lirette v. Babin Farm, Inc., 02-1402 (La.App. 1st Cir.4/2/03), 843 So.2d 1141, 1143. Dismissal is a sanction of last resort only to be imposed where a party has failed to comply with a court order of discovery and only after an opportunity to be heard has been afforded the litigant. Hutchinson, 886 So.2d at 440.
[ ^Before taking the drastic action of dismissal for a discovery violation, a court should consider the following four factors: (1) whether the violation was willful or resulted from inability to comply, (2) whether less drastic sanctions would be effective, (3) whether the violations prejudiced the opposing party’s trial preparation, and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. Hutchinson, 886 So.2d at 440; Horton, 635 So.2d at 203. Dismissal is justified only if the record contains sufficient evidence of a party’s (as opposed to counsel’s) willful disobedience, bad faith, or fault. Lirette, 843 So.2d at 1143; In re Medical Review Panel, 99-2088 (La.App. 1st Cir.12/22/00), 775 So.2d 1214, 1218.
Because only violations of court-ordered discovery will support the sanction of dismissal, each discovery order contained in the trial court’s judgments must be analyzed.[8]
*632 1. October 23, 2012 Judgment
The October judgment granted the defendant’s initial motion to compel and ordered BancorpSouth to provide certain specified documents and information. The judgment first ordered BancorpSouth to produce the “identity and policies” of the bank’s insurance carriers. Gladney and Kleinpeter Trace do not contend that Ban-corpSouth failed to comply with that order.
The judgment next ordered the production of “all documents previously withheld or redacted” by BancorpSouth under LSA-R.S. 6:333(1X2). The record does not delineate which documents were “previously withheld or redacted” by the [¡¡shank in reliance upon that statute, but the bank’s first assertion of LSA-R.S. 6:333(I)(2) was in a letter dated April 24, 2012, from the bank’s counsel to counsel for the defendants that sought the return of documents previously produced to the defendants. The record reflects that at least some of the information contained on the disk generated in connection with the second data search had been withheld in reliance on LSA-R.S. 6:333. However, the record also establishes that BancorpSouth delivered the entire disk to its counsel on May 3, 2012, approximately five months before the entry of the October judgment. Although BancorpSouth’s counsel’s earlier receipt of the disk was not disclosed until after the September 2012 hearing, the record contains no evidence that suggests that BancorpSouth instructed or directed its counsel not to disclose the entire disk.
To the contrary, the bank’s counsel testified that his failure to disclose his receipt of the disk was due to his contention that the information on the disk was privileged and his mistaken belief that it contained very little, if any, new information relevant to the litigation. According to the bank’s counsel, that mistaken belief was the result of his failure to properly access all of the files on the disk when he opened it, something he characterized as an “honest mistake.” The trial court expressed “no doubt whatsoever” in counsel’s veracity and accepted that there was “a simple breakdown by Mr. Carroll as to his review and his appreciation of what the disk contained.” Therefore, the only evidence concerning the timing of the disclosure and production of information on the disk establishes that any failure in that regard was the fault of the bank’s attorney rather than the bank. Those actions do not support the sanction of dismissal.[9]
The October judgment next orders the production of the “documents referenced in Ms. Abreo’s March 12, 2012 Affidavit,” previously defined herein as 127the “Abreo file.” The defendants’ initial motion to compel acknowledges that BancorpSouth had disclosed several months before the October judgment that the Abreo file had been inadvertently destroyed. Bancorp-South’s explanation for the loss of the file was later confirmed in the following answer to interrogatory forwarded on September 6, 2012:
Upon the initiation of this lawsuit, Ms. Abreo put her daily file in a box and placed it in a bank storage room. Last year, when federal regulators came into the bank to conduct a standard review, a [BancorpSouth] employee unrelated to the Kleinpeter loans, moved the box from the storage room to allow access to other files. It is [BancorpSouth’s] belief that the box likely was moved to a room containing shredding bins and placed next to a bin. [BancorpSouth] believes *633 that the box was inadvertently picked up by the outside vendor and shredded; although, [BancorpSouth] continues to search its files for the record.
This explanation was again confirmed by Scott Singletary at the December 2012 hearing, who stated that the box was never found.
While the destruction of the Abreo file supports the imposition of an adverse evidentiary presumption as discussed later in this opinion, it cannot support a finding that BancorpSouth intentionally or in bad faith violated the October judgment by failing to produce the file. The file was destroyed before the October judgment was rendered.
The judgment next orders the production of “Bagwell’s complete files excluding his personnel file maintained” by BancorpSouth. Less than twenty-four hours before Bagwell’s deposition in April of 2012, BancorpSouth delivered 475 pages of documents, which resulted in the cancellation of the deposition to allow Kleinpeter’s counsel an opportunity to review the information. Several days later, Bancorp-South produced another 335 pages of documents. The defendants do not argue that “Bagwell’s complete files” have not now been produced or that any other Bagwell files exist. Although the production of those files was delayed and resulted in the postponement of depositions, the production nevertheless occurred |2Sbefore it was ordered by the October judgment. Therefore, the delayed production does not support the sanction of dismissal.
The October judgment also ordered the “re-deposition of Mr. Larry Denison and other [BancorpSouth] employees.” There is no evidence in the record that Bancorp-South willfully or in bad faith prevented the re-deposition of Denison or any other [BancorpSouth] employee.
The last order in the October judgment directed BancorpSouth to'provide Kleinpeter “with specific information as to exactly what efforts BancorpSouth has made to obtain the backup electronic files and preserve electronic communications with a litigation hold.” This language requires only “information” as to the “efforts” made by BancorpSouth to obtain and preserve information “with a litigation hold.” Kleinpeter argues that BancorpSouth should be sanctioned be-, cause “a litigation hold has still never been implemented in this case.” However, the judgment does not order that a litigation hold be “implemented,” nor is there any evidence in the record that the failure to implement a litigation hold after the October judgment resulted in the loss of any information. Kleinpeter’s arguments focus on BancorpSouth’s failure to place a litigation hold on the relevant files .when it was first notified of the potential bank fraud issues in this case, or at the latest on October 12, 2010, when suit was filed. The failure to implement a litigation hold at that time, at least two years before the October 23, 2012 judgment, cannot constitute a violation of the October judgment and, therefore, cannot support the sanction of dismissal.
2. January 8, 2013 Judgment
The January judgment granted the renewed motion to compel discovery and ordered production of the following documents and information:
1. [BancorpSouth] shall deliver a complete, unedited, un-redacted copy of the disk containing the estimated 5.2 gigabytes of electronic documents ... to the Court on or before December 21, 2012;
| ⅝)2. BancorpSouth shall produce to Kleinpeter Trace all responsive, non-privileged electronic documents stored *634 or otherwise maintained on the Disk on or before January 7, 2013.
BancorpSouth had delivered the identified disk to its attorneys more than seven months earlier on May 3, 2012. The record contains no evidence that Bancorp-South prevented its attorneys from producing the entire disk to the court on or before December 21, 2012, or from producing all responsive, non-privileged electronic documents stored on the disk to Klein-peter Trace on or before January 7, 2013. Neither do the defendants contend that the bank failed to deliver the entire disk to the court in a timely manner. In fact, their objection to the production that occurred on January 7, 2013, complained primarily of the bank’s responses to discovery propounded after the December hearing that was not the subject of the January judgment. Accordingly, the record fails to establish that BancorpSouth willfully refused to comply with any order in the January judgment.
Citing statements made by the trial court at the December hearing, Kleinpeter Trace and Gladney argue that Bancorp-South was ordered to produce all information responsive to Kleinpeter’s outstanding discovery on or before January 7, 2013. But that is a substantially broader mandate than the orders set forth in the written January judgment. The January judgment identifies both the hearing and the motion before the court and provides that the court, after considering the pleadings, memoranda, testimony of witnesses and argument of counsel “and for the reasons orally assigned, rendered, its judgment as follows.” (Emphasis added.) This language is followed by decrees granting the motion and ordering the production of the information on the disk. The judgment also contains a certification by Bancorp-South’s counsel that the judgment was emailed to opposing counsel on December 21, 2012, in accordance with Rule 9.5 of the Louisiana Rules for Civil Proceedings in District Courts, and that counsel for [ 30Kleinpeter Trace and Gladney agreed to the form and content of the judgment. No objection to the judgment appears in the record, nor have the defendants contended that any objection was lodged.
The January judgment is the trial court’s judgment for the renewed motion to compel. To the extent that it may vary from statements made by the trial court at the hearing, the written judgment controls. See Hebert v. Hebert, 351 So.2d 1199, 1200 (La.1977) (“[T]he notion that the substance of the judge’s oral remarks should govern instead of the substance of the written judgment ... would destroy the integrity of written judgments as evidence and public record of the court’s decree”); Slaughter v. Board of Supervisors of Southern University and Agricultural and Mechanical College, 10-1049 (La.App. 1st Cir.8/2/11), 76 So.3d 438, 459, writ denied, 11-2110 (La. 1/13/12), 77 So.3d 970 (recognizing that if there is any conflict between a written judgment and oral reasons for judgment, the language of the judgment controls). The defendants’ contention that BancorpSouth was properly sanctioned for failing to respond to discovery that was not ordered by the written January judgment is without merit.
3. Other Productions by BancorpSouth Cited by the Trial Court
In its oral reasons given in support of the May 15, 2013 judgment of dismissal, the trial court referred to other information belatedly produced by BancorpSouth. Again, the information referred to by the trial court is not included in either the October judgment or the January judgment.
The trial court referred to the belated production of the Tanner/Denison email, *635 which was first produced on January 13, 2012, [bank br. pg. 4, R2903-2906] and the “second” desk file of James . Stringer, which was produced on January 14, 2013. The production of the Tanner/Denison email preceded the October judgment and is not addressed in either the October judgment or the January judgment. Any late production of that email is not a violation of either judgment.
lai Similarly, neither the October judgment nor the January judgment ordered the production of the Stringer file. Although the October judgment ordered the production of all documents previously withheld or redacted under LSA-R.S. 6:333(I)(2), the record does not suggest that BancorpSouth withheld the “second” Stringer file in reliance upon LSA-R.S. 6333(I)(2). Rather, the bank contends that the additional documents were produced as a supplement to earlier discovery requests and were produced when the documents were discovered. Cf. LSA-C.C.P. art. 1428; Fidele v. Crescent Ford Truck Sales, Inc., 00-1934 (La.App. 5th Cir.4/11/01), 786 So.2d 147, 152.
The parties do not dispute that documentation from Stringer’s file was initially produced prior to his deposition in April of 2012. That discovery response was supplemented in January of 2013 with additional information in Stringer’s possession, and counsel for BancorpSouth explained the delayed production as follows:
On November 27 and 29, 2012, undersigned counsel conducted individual interviews with Larry Denison, Mark Herbst, Janet Feig, Melissa Abreo, Mary White, Chris Pope, Scott Single-tary and James Stringer to get information regarding their customary practice of managing their [e-mail.] As part of those interviews and in an effort to make sure every stone had been turned, undersigned counsel asked each custodian whether they had any additional documents that could be potentially related to any of the loans at issue in this lawsuit that had not been previously produced to counsel. As a result of this questioning, James Stringer realized he had a second collection of Kleinpeter Trace documents in his custody and immediately turned those files over to counsel for BancorpSouth in early December, 2012. Those files were then produced to Defendants in January of 2013 in an ongoing effort to fulfill Ban-corpSouth’s duty to supplement its discovery responses.
While BancorpSouth regrets that the file was not located and produced earlier, it is not uncommon, especially in large, commercial litigation matters, to locate additional responsive documents requiring supplementation. Defendants’ suggestion that BancorpSouth has been sitting on these documents for the last 11 months is false. To the contrary, the file at issue was located as a result of BancorpSouth’s continued search for any relevant and responsive documents. [R1986-1987]
| ^Although the defendants argue that Stringer “willfully concealed” this information, we note that they do not identify any prejudicial information in the supplemental production that might have motivated - Stringer or any other bank employee to intentionally withhold those documents. In fact, other than generally referencing some “handwritten notes” included in the second production, the defendants have not identified any new information in that production that is probative of a contested issue in the case. The evidence does not reasonably support a finding that the “second” Stringer file was the subject of either the October judgment or the January judgment, or that BancorpSouth willfully *636 withheld that file in violation of any judgment. The trial court clearly erred in relying upon the production of the “second” Stringer file as a basis for imposing sanctions against BancorpSouth.
The record before us does not support the trial court’s conclusion that the party, BancorpSouth, willfully or in bad faith failed to comply with the trial court’s judgments. The trial court’s oral reasons given for the May 15, 2013 judgment reflect that the dismissal rested on conduct that did not relate to court-ordered discovery and in most instances occurred prior to the first discovery order. While the trial court’s hearings elucidated the extent of BancorpSouth’s failures to respond to discovery requests, those failures do not, as a matter of law, support the ultimate sanction of dismissal of BancorpSouth’s claims. For these reasons, we reverse the May 15, 2018 judgment to the extent it dismissed the claims of BancorpSouth against Klein-peter Trace and Gladney and struck the defenses and exceptions asserted by Ban-corpSouth to the reconventional demand filed by Kleinpeter Trace and Gladney.
C. Award of Attorney Fees
In the sixth assignment of error, Ban-corpSouth asserts that the trial court erred in awarding attorney fees and expenses in favor of Kleinpeter Trace and | ¡¡¡¡Gladney in the amount of $225,000.00. The May judgment does not indicate whether the sum was awarded as a sanction pursuant to LSA-C.C.P. art. 1471 or in connection with granting of the renewed motion to compel pursuant to LSA-C.C.P. art. 1469(4).
The October judgment granted the initial motion to compel and included an award of attorney fees in the amount of $750.00 for the preparation and filing of the motion. The January judgment granted the renewed motion to compel and awarded attorney fees and costs, but deferred a determination of the specific amount of the fees and costs associated with the motion until the subsequent hearing on the motion for sanctions. The January judgment also reserved any ruling on the motion for sanctions, including attorney fees, until that same hearing. At the conclusion of the May 2012 hearing on the motion for sanctions, the trial court found that Kleinpeter Trace and Gladney were entitled to an award of attorney fees and costs, but again deferred a ruling on the amount until a later date. The trial court then signed the May judgment that included an award for attorney fees and expenses in the amount of $225,000.00. The judgment does not specify whether that award was granted in connection with the renewed motion to compel, the motion for sanctions, or both.
While all counsel at oral argument indicated that a stipulation was reached concerning the amount of the attorney fees, they were not in agreement about the scope of any stipulation, and there is no stipulation in the record. Given the absence of a stipulation in the record and the ambiguity concerning the trial court’s legal basis for the attorney fee award, we will review the propriety of the award under both LSA-C.C.P. arts. 1471 and 1469(4).
Article 1471(C) provides that in lieu of, or in addition to, any of the sanctions authorized by Subsections A and B of the article, the court shall require the party failing to obey the order or the attorney advising him or both to pay the treasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Criteria to be considered in imposing any sanctions under article 1471 are the prejudice to the moving party and the willfulness of *637 the noncompliant party. See Horton, 635 So.2d at 204.
As we have previously determined, the evidence in the record does not reasonably support a finding that Bancorp-South willfully failed to obey any orders set forth in the October judgment or the January judgment. Therefore, article 1471 does not authorize an award of attorney fees to Kleinpeter Trace and Gladney as a sanction against BancorpSouth. To the extent the award of attorney fees in the May judgment was imposed as a sanction under Article 1471, the trial court abused its discretion in making the award.[10]
Under article 1469(4), when a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party “the reasonable expenses incurred in obtaining the order, including attorney’s fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.” The awardable expenses authorized by article 1469(4) are not as broad as the “panoply of sanctions” that may be imposed under article 1471. See MTU of North America, Inc. v. Raven Marine, Inc., 475 So.2d 1063, 1070 (La.1985); Menzie Tile Company, Inc. v. Professional Centre, 594 So.2d 410 (La.App. 1st Cir.1991), writ denied, 600 So.2d 610 (La.1992). These rules, in effect, offer a built-in second chance for most recalcitrant parties to comply with discovery and pay motion costs and fees before becoming amenable to the more severe sanctions associated with [^disobedience of court-ordered discovery. MTU of North America, Inc., 475 So.2d at 1070.
In MTU of North America, Inc., the defendant filed a motion to compel after the plaintiffs counsel instructed two witnesses not to answer certain questions during their depositions. The trial court granted the motion and ordered the witnesses to answer the questions and that the depositions be retaken for that purpose at the plaintiffs expense, including travel costs and attorney fees totaling $29,357.00. MTU of North America, Inc., 475 So.2d at 1067. The Supreme Court reversed the award of expenses, explaining:
Because the party whose conduct necessitated the motion had not disobeyed a preexisting order compelling such discovery, however, under [article] 1469 that party may be charged with only the reasonable expenses and attorney’s fees incurred in obtaining the order.
⅜ * *
After reviewing the record and considering arguments, we conclude that the trial court did not abuse its discretion in compelling discovery but that it fell into error in ordering the losing party to pay more than the reasonable costs of obtaining the order.
MTU of North America, Inc., 475 So.2d at 1066, 1067. The Supreme Court set aside the trial court’s sanctions and remanded the matter for a determination of the reasonable costs, including attorney fees, incurred in obtaining the order. MTU of North America, Inc., 475 So.2d at 1071. See also Menzie Tile Company, Inc., 594 So.2d at 417 (holding that article 1469(4) *638 did not authorize an award of travel expenses).
In the present case, the October judgment granted the initial motion to compel, and that judgment included an award of $750.00 for the attorney fees incurred to prepare and file that motion. That award was not appealed. The January judgment, in pertinent part, granted the renewed motion to compel, ordered the production of the disk, and awarded attorney fees and costs, but | afideferred a ruling on the amount of the fees and costs to the subsequent hearing on the motion for sanctions. Although the subsequent May judgment included a sentence that again “granted” the motion to compel, it did not include any additional orders compelling Bancorp-South to produce information or to otherwise respond to discovery. Rather, the substance of the May judgment concerns the sanctions and the attorney fee award.
We find that article 1469(4) authorizes an award for the reasonable attorney fees and expenses incurred by Klein-peter Trace and Gladney to obtain the January judgment that compelled Ban-corpSouth to produce the disk; however, the trial court abused its discretion to the extent it awarded the sum of $225,000.00 for those fees and expenses. The amount of the award indicates that it includes fees and expenses that are not directly related to the filing and pursuit of the renewed motion to compel. Therefore, we vacate the award of $225,000.00 and remand the matter to the trial court for a determination of the reasonable expenses, including attorney fees, incurred in obtaining the January judgment. See MTU of North America, Inc., 475 So.2d at 1071.[11]
In summary, the trial court abused its discretion to the extent it assessed attorney fees as a sanction under LSA-C.C.P. art. 1471. To the extent the award was rendered pursuant to LSA-C.C.P. art. 1469(4), the amount of the award was an abuse of discretion because it was not limited to the reasonable expenses and attorney fees incurred in obtaining the January judgment. Therefore, we vacate the |37award of $225,000.00 and remand the matter for a determination of the reasonable expenses, including attorney fees, incurred in obtaining the January judgment.[12]
D. Imposition of Adverse Presumption for Abreo File
In its fourth assignment of error, Ban-corpSouth asserts that the trial court erred in creating an adverse presumption for the destruction of the Abreo file. Although the trial court imposed the adverse presumption in response to a motion to compel and impose sanctions, it is not clear whether the presumption was ordered as a sanction under LSA-C.C.P. art. 1471[13] or was imposed under the doctrine of spolia *639 tion of evidence. While, for the reasons discussed above, the imposition of an adverse presumption would not be warranted herein under LSA-C.C.P. art. 1471, an adverse presumption could nonetheless be imposed under the theory of spoliation of evidence. Moreover, we find no abuse of the trial court’s discretion in its decision to impose the adverse presumption with regard to the Abreo file under the facts presented herein.
Spoliation of evidence generally refers to an intentional destruction of evidence for the purpose of depriving opposing parties of its use.[14] McCleary v. Terrebonne Parish Consolidated Government, 2009-2208, p. 2 (La.App. 1st Cir. 9/30/10), 2010 WL 3822225 (unpublished opinion), writ denied, 2010-2807 (La.2/11/11), 56 So.3d 1003. The theory of spoliation of evidence has its roots in the evidentiary doctrine of “adverse presumption,” which allows for a jury instruction to be given that the destroyed evidence is presumed to have contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained. Robertson v. Frank’s Super Value Foods, Inc., 2008-592 (La.App. 5th Cir. 1/13/09), 7 So.3d 669, 673. The evidentiary doctrine of “adverse presumption” was applied by the Louisiana Supreme Court as early as 1910 in Varnado v. Banner Cotton Oil Co., 126 La. 590, 590-592, 52 So. 777, 777-778(910), wherein the Court applied the maxim “omnia prae-sumuntur contra spoliatorem,” holding that the refusal of the managers of a corporation to produce the corporate books to interested stockholders justified a court and jury to draw “the most unfavorable inference, consistent with reason and probability, as to the nature and effect of the evidence which the opposite party has been precluded from using and examining as a means for the discovery of the truth.”
Thus, as previously recognized by this court, when a litigant fails to pro *640 duce evidence within his reach, a presumption that the evidence would have been detrimental to his case is applied, unless the failure to produce the evidence is adequately explained. Paradise v. Al Copeland Investments, Inc., 2009-0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018, 1027; Randolph v. General Motors Corporation, 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. One explanation for failure to ^produce evidence that has been deemed reasonable is the situation where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was discarded, such that the need for the evidence was not foreseeable. Under those circumstances, the theory of spoliation of evidence does not apply. See generally Higgins v. Richard, 2008-2504, p. 4 (La.App. 1st Cir.6/12/09), 2009 WL 2486892 (unpublished). On the other hand; when a party has notice that certain evidence within its control is relevant to pending or imminent litigation, the party has an obligation to preserve the evidence. Everhardt v. La. Department of Transportation & Development, 2007-981 (La.App. 4th Cir.2/20/08), 978 So.2d 1036,1044.
The appellate standard of review for a trial court’s decision of whether an adverse presumption for spoliation of evidence should be imposed is whether the trial court abused its discretion. See Paradise, 22 So.3d at 1028; Acadian Gas Pipeline System v. Nunley, 46,648 (La.App. 2nd Cir.11/2/11), 77 So.3d 457, 465, writ denied, 2001-2680 (La.2/10/12), 80 So.3d 487.
After review of the record on appeal, we conclude that the evidence before us supports the trial court’s obvious factual determination that the reason offered by BancorpSouth as to the destruction of the evidence was pretextual, and we find no manifest error as to that finding. In the instant case, not only did BancorpSouth have notice that the Abreo file, which was within its control, was relevant to the pending litigation, it attempted to refer this evidence in support of a motion for summary judgment through Abreo’s affidavit, which referenced documents in her file. BancorpSouth’s contention that it did not know what happened to the file, which it know to be relevant to this litigation, but that it may have inadvertently been destroyed does not constitute a reasonable explanation. See Salone v. Jefferson Parish Department of Water, 94-212 (La.App. 5th Cir.10/12/94), 645 So.2d 747, 750-751. Moreover, in light of the foregoing, we find no abuse of 140discretion in the trial court’s imposition of an adverse presumption that the destroyed evidence would have been detrimental to BancorpSouth. See Salone, 645 So.2d at 750-751.
CONCLUSION
We affirm the October 23, 2012 judgment to the extent it denied Bancorp-South’s motion for protective order and granted the motion to compel ordering the production of all documents previously withheld or redacted by the bank pursuant to LSA-R.S. 6:333(I)(2). We affirm the January 8, 2013 judgment to the extent it ordered that an adverse presumption instruction shall be given to the jury as to the contents of Abreo’s daily work file; and we reverse the May 15, 2013 judgment to the extent it: (1) dismissed the claims of BancorpSouth against Kleinpeter Trace and Gladney, and (2) struck the defenses and exceptions asserted by BancorpSouth to the reconventional demand filed by Kleinpeter Trace and Gladney. We vacate the attorney fee award of $225,000.00 in the May judgment and remand the matter for a .determination of the reasonable expenses, including attorney fees, incurred in *641 obtaining the January judgment. Costs of this appeal are assessed one-half to Ban-corpSouth Bank and one-half to Kleinpeter Trace, L.L.C. and Charles Wallace Glad-ney. The stay order granted by the trial court is hereby lifted, and the case is remanded for further proceedings.
OCTOBER 23, 2012 JUDGMENT AFFIRMED IN PART; JANUARY 8, 2013 JUDGMENT AFFIRMED IN PART; MAY 15, 2013 JUDGMENT REVERSED, IN PART, AND VACATED, IN PART; STAY ORDER LIFTED; CASE REMANDED.
KUHN, J. agrees in part & dissents in part with reasons.
CRAIN, J. agrees in part & dissents in part with reasons.
PETTIGREW, J. concur in part and dissents in part for the Reasons assigned by Judge WELCH. I would affirm the TRIAL COURT in all Respects.
WELCH, J. agrees in part and dissent in part and assign Reasons.

. Notes one and two are the subject of a separate foreclosure proceeding, via executo-ry process, against Kleinpeter Trace.

. While Kleinpeter Trace and Gladney are not the only defendants in this proceeding, they are sometimes collectively referred to herein as “the defendants” for ease of reference.

. The parties stipulated that Messa’s testimony about these events would be the same as Carroll’s testimony.

. Based upon statements by both counsel at oral arguments before this court, the amount of the attorney fee award was apparently based upon a stipulation. However, the stipulation is not in the appellate record.

. "The trial court designated the May judgment as final and appealable in accordance with LSA-C.C.P. art. 1915(B) based upon the court’s finding that there is no just reason to delay the review of the judgment. Based on our de novo review of the matter, we find that the trial court properly certified this judgment as final for purposes of an immediate appeal.” See R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05), 894 So.2d 1113, 1122-23. The October judgment and January judgment are interlocutory judgments, which are generally not appealable. See LSA-C.C.P. arts. 1841 and 2083. However, when an unrestricted appeal is taken from a final judgment determinative of the merits, the appellant is generally entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. See Judson v. Davis, 04-1699 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1112, writ denied, 05-1998 (La.2/10/06), 924 So.2d 167. In the case of an appeal of a partial summary judgment or a partial judgment, as in the May 15, 2013 judgment in this case, which has been designated as final under article 1915(B), an appellant may also appeal an interlocutory judgment involving the same or related issues. See Dean v. Griffin Crane & Steel, Inc., 05-1226 (La.App. 1st Cir.5/5/06), 935 So.2d 186, 189 n. 3, writ denied, 06-1334 (La.9/22/06), 937 So.2d 387. Therefore, because the issues involved in the May 15, 2013 judgment are closely related to and based on issues raised in the October and January interlocutory judgments, it is appropriate for this court to review those interlocutory judgments in this appeal.

. A privilege is a "special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty. A privilege grants someone the legal freedom to do or not to do a given act. It immunizes conduct that, under ordinary circumstances, would subject the actor to liability.” Deer Enterprises, LLC v. Parish Council of Washington Parish, 10-0671 (La.1/19/11), 56 So.3d 936, 944 (quoting Black’s Law Dictionary 1234 (8th ed.2004)).

. Gladney and Kleinpeter Trace correctly pointed out to the trial court that LSA-R.S. 6:333 sets forth procedures applicable to a third party's request for a customer’s financial records, and we express no opinion as to the specific application of LSA-R.S. 6:333(I)(2) to any such request by a third party.

. Counsel for BancorpSouth asserted at oral argument before this court that we should only consider the alleged acts of noncompliance with the January judgment as a basis for the sanction of dismissal because only that judgment expressly provided that failure to comply would result in a dismissal of the bank’s claims and the striking of its defenses. However, a judgment need not include such a “warning” in order to support a sanction of dismissal, if a party willfully fails to obey the judgment. See Hutchinson, 886 So.2d at 440-441 (After the trial court dismissed case as a sanction for a party’s failure to comply with court-ordered discovery, the court of appeal reversed the order of dismissal and remanded to the trial court "with a warning that [the] c.ase will be dismissed if the new order of the trial court is not obeyed timely.” Finding no abuse of discretion by the trial court, the Supreme Court reversed the court of appeal and reinstated the trial court's order of dismissal.).

. The only other documents specifically referenced in the record as being "previously withheld” pursuant to LSA-R.S. 6:333(I)(2) were some unidentified "appraisals.” Kleinpeter Trace and Gladney do not contend that Ban-corpSouth failed to produce those appraisals.

. Although article 1471(C) permits an award of attorney fees against a party’s counsel, when appropriate, the trial court did not grant an award against BancorpSouth's counsel, and Kleinpeter Trace and Gladney did not appeal the lack of any sanction against the bank’s counsel. The trial court also specifically found, "I do not find fault in the conduct of plaintiff's counsel.”

. Article 1469(1) does not authorize an award of attorney fees and expenses if the court "finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.” To the extent the trial court found no substantial justification to the opposition to the renewed motion to compel and no other circumstances making an award of expenses unjust, we find no abuse of discretion in that determination. We further note that "all costs of this proceeding incurred” in the hearings in September, December, and May were awarded by a separate order in the May judgment that is not challenged on appeal.

. In an answer filed to this appeal, Kleinpeter Trace and Gladney request an additional award for attorney fees incurred in opposing BancorpSouth’s appeal. In light of the rulings on appeal, we find that an additional award of attorney fees to Kleinpeter Trace and Gladney is not warranted.

. As previously pointed out, the Abreo file was destroyed before the entry of any judgments ordering discovery. Therefore, the loss *639 of that information cannot be considered a violation of court-ordered discovery that is sanctionable with an adverse presumption under article 1471.

. Notably, this court has previously alluded to a negligence theory of spoliation when addressing the application of the adverse presumption for spoliation of evidence. Paradise v. Al Copeland Investments, Inc., 2009-0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018, 1027. We further note that while the eviden-tiary doctrine of adverse presumption is still viable, some jurisprudence has also recognized a cause of action in tort for damages based on spoliation of evidence, and some courts have recognized such a cause of action based on either intentional spoliation or negligent destruction of evidence. See Harris v. St. Tammany Parish Hospital Service District No. 1, 2011-0941, 2011-0942 (La.App. 1st Cir.12/29/11), 2011 WL 6916523 (unpublished opinion), writs denied, 2012-0585, 2012-0678 (La.4/20/12), 85 So.3d 1275, 1277, McCleary v. Terrebonne Parish Consolidated Government, 2009-2208 (La.App. 1st Cir.9/30/10), 2010 WL 3822225 (unpublished opinion), writ denied, 2010-2807 (La 2/11/11), 56 So.3d 1003, and Robertson v. Frank’s Super Value Foods, Inc., 2008-592 (La.App. 5th Cir. 1/13/09), 7 So.3d 669, 673 (wherein the court noted that this cause of action has been recognized as the “tort of impairment of a civil claim”).
For a discussion of the distinction between the evidentiary doctrine of adverse presumption for spoliation of evidence and the cause of action in tort, see Robertson, 7 So.3d at 673. See also Clavier v. Our Lady of the Lake Hospital Inc., 2012-0560 (La.App. 1st Cir. 12/28/12), 112 So.3d 881, 885-886, writ denied, 2013-0264 (La.3/15/13), 109 So.3d 384, wherein one panel of this court cautioned that allowing a party to assert a separate cause of action for spoliation against a party to the underlying action, where other remedies such as an adverse presumption are available, would create "a plethora of problems.” The Louisiana Supreme Court has not yet spoken as to the availability of a cause of action in tort based on spoliation of evidence. Robertson, 7 So.3d at 673.