STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0523

DOUGLAS ROBINS AND KATHERINE ROBINS

VERSUS

MOHAMMAD ZOHAIR PIRZADAH, M.D. AND CHARLES LANE PEARSON, JR., M.D.

Judgment Rendered:     DEC 2 7 2019

********

Appealed from the 19th Judicial District Court

In and for the Parish of East Baton Rouge

State of Louisiana

Suit No. 642149

The Honorable William A. Morvant, Judge Presiding

********

John L. Hammons                        Counsel for Plaintiffs/Appellants
William W. Murray, Jr.                  Douglas and Katherine Robins
Lafayette, Louisiana


Janie Languirand Coles                  Counsel for Defendants/Appellees
Jonathan E. Thomas                      Mohammad Z. Pirzadah, M.D. and
Baton Rouge, Louisiana                  Charles L. Pearson, Jr., M.D.


********

BEFORE: HIGGINBOTHAM, PENZATO AND LANIER, JJ.

Higginbotham, J. Concurs.

**LANIER, J.**

Plaintiffs/appellants, Douglas and Katherine Robins, seek review of a judgment rendered by the Nineteenth Judicial District Court in favor of the defendants/appellees, Mohammad Z. Pirzadah, M.D. and Charles L. Pearson, Jr., M.D., in which the trial court found the plaintiffs failed to prove their case of medical malpractice against the defendants. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On February 20, 2012, Douglas Robins presented to the emergency room (ER) at Our Lady of the Lake Hospital (OLOL) in Baton Rouge with complaints of chest tightness, shortness of breath, and coughing yellow sputum. Mr. Robins was first examined by Dr. Gerard Broussard in the ER, who ordered a chest x-ray. The x-ray revealed findings consistent with congestive heart failure (CHF).

Based on his examination and the x-ray, Dr. Broussard admitted Mr. Robins to the intensive care unit (ICU) under Dr. Pirzadah's care. Mr. Robins alleged that Dr. Pirzadah discontinued treatment for CHF as ordered by Dr. Broussard and diverted Mr. Robins from the ICU to a telemetry bed. Mr. Robins remained at OLOL overnight, and on the following day was seen by Dr. Pearson. Mr. Robins alleged that Dr. Pearson did not timely review the x-ray or electrocardiogram performed on Mr. Robins which indicated CHF, and thus misdiagnosed Mr. Robins with pneumonia.

During the afternoon of February 21, 2012, Dr. Pearson noted that Mr. Robins's condition was worsening. He transferred Mr. Robins to critical care after he was placed on a ventilator for being hypoxic. Mr. Robins's cardiac rhythm deteriorated, and he was resuscitated. It was at this point that Dr. Pearson reported to Mr. Robins's family that he had a poor prognosis. Dr. Carl Luikart was then

2

consulted for Mr. Robins's cardiac arrest. Dr. Luikart's impression included congestive cardiomyopathy, acute respiratory failure, and acute cardiac arrest.

On February 24, 2012, Mr. Robins was examined by Dr. Dariusz Gawronski, who found that Mr. Robins had sustained a hypoxic brain injury that left Mr. Robins in a vegetative state. On March 2, 2012, Mr. Robins was examined by Dr. Stephen Gordon, who noted that he was in a deep coma with intermittent twitching. In this permanent vegetative state, Mr. Robins required assistance with breathing and eating. When Mr. Robins was released from OLOL on March 8, 2012, he was diagnosed with anoxic brain damage, acute ventilator dependent respiratory failure, status post-cardiac arrest, acute respiratory distress syndrome, and candida in sputum. His prognosis for a functional recovery was poor.

The plaintiffs filed a request for a Medical Review Panel (MRP). The MRP rendered an opinion, which was mailed to plaintiffs on June 15, 2015. Two of the three panel physicians concluded that:

> [T]here was a deviation by Dr. Pirzadah and Dr. Pearson. Upon hospitalization a deviation occurred as the patient was no longer treated for [CHF] and that treatment should have continued.... [T]he patient suffered a worsening pulmonary edema that led to respiratory failure, but cannot say whether this led to cardiac arrest.

The plaintiffs filed a petition for damages on September 10, 2015, in which they claimed that Dr. Pirzadah breached the applicable standards of care by failing to follow and continue Dr. Broussard's treatment plans for CHF, and by cancelling Dr. Broussard's plan for admitting Mr. Robins to the ICU, thereby reducing the level of acute care he required. The plaintiffs also claimed that Dr. Pearson breached the applicable standards of care by failing to review and interpret the chest x-ray and echocardiogram results, and by not diagnosing Mr. Robins's worsening CHF until it resulted in cardiac arrest and hypoxia.

3

Following a bench trial, the trial court ruled in favor of the defendants on September 26, 2018, finding that the plaintiffs failed to meet their burden of proof on their claims. The trial court dismissed the plaintiffs' suit with prejudice, and plaintiffs appealed.

## ASSIGNMENTS OF ERROR

The plaintiffs allege the following errors by the trial court:

1. The trial court committed manifest error in holding that Dr. Michael Walton, cardiologist and MRP member, testified that both he and the panel were "wrong" in concluding that the defendants violated applicable medical standards of care if Mr. Robins was diagnosed with either pneumonia or Adult Respiratory Distress Syndrome (ARDS).

2. The trial court made an error of law in refusing to apply an "adverse presumption" against the defendant, Dr. Pirzadah, even though Dr. Pirzadah not only did not testify but also did not appear at the trial.

3. The trial court committed manifest error by holding that the defendants had no duty to treat Mr. Robins's CHF that was diagnosed by four cardiologists, by three critical care physicians, by two emergency physicians, and by one radiologist, and which was objectively confirmed by an echocardiogram ordered by Dr. Pirzadah but not reviewed by either defendant.

## DISCUSSION

The manifest error standard of review is applicable in medical malpractice cases. See *Landry v. Leonard J. Chabert Medical Center*, 2002-1559 (La. App. 1 Cir. 5/14/03), 858 So.2d 454, 462, writs denied, 2003-1748, 1752 (La. 10/17/03), 855 So.2d 761. Under the manifest error standard of review, a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Touchard v. Slemco Elec. Foundation*, 99-3577 (La. 10/17/00), 769 So.2d 1200,

1204.  Therefore, the issue for the reviewing court is not whether the trier of fact was wrong, but whether the factfinder's conclusions were reasonable under the evidence presented.  When a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.  *Touchard*, 769 So.2d at 1204.

Plaintiffs' first and third assignments of error essentially challenge the trial court's ruling.  Specifically, plaintiffs argue that the trial court's findings of fact were manifestly erroneous.  The trial court's ruling in the instant case was accompanied by extensive oral reasons.  The trial court stated it gave much deference to the testimony of Dr. Michael Walton, who was a member of the MRP, and was board certified in internal medicine, cardiology and interventional cardiology.  The trial court found Dr. Walton to be a thoroughly prepared witness, and his testimony to be highly credible.

As a panelist on the MRP, Dr. Walton found that the defendants did not meet the required standard of care in treating Mr. Robins, and that these breaches in care were substantial contributing factors in Mr. Robins's brain injury.  However, Dr. Walton and the other two panel members did find that Dr. Broussard had complied with the appropriate standards of care regarding his diagnosis and treatment of CHF.

During trial, Dr. Walton elaborated on the defendants' breach of their applicable standards of care in that they failed to treat all of Dr. Broussard's diagnoses, specifically disregarding the diagnosis of CHF.  He stated that a patient can have CHF and pneumonia simultaneously, and the applicable standards of care would require both to be treated.  He confirmed that on the day after Mr. Robins was admitted to OLOL, he suffered prolonged cardiac arrest while under the care of the defendants.

From his review of Mr. Robins's medical records, Dr. Walton could not find any indication that Dr. Pirzadah treated Mr. Robins for CHF, despite his having access to objective tests, lab results, a chest x-ray, an EKG, Dr. Broussard's notes, and nursing notes that indicated CHF. Dr. Walton referred specifically to the echocardiogram results, which he believed revealed significant findings of an enlarged heart that was having difficulty with pumping.

Likewise, Dr. Walton did not find any notations from Dr. Pearson that he recognized CHF in Mr. Robins. Dr. Walton stated that CHF is a buildup of fluid around the heart, and that proper treatment requires an attempt to reduce fluid buildup around the heart. In treating Mr. Robins for pneumonia, the defendants gave Mr. Robins antibiotics and intravenous fluids, which led to a buildup of fluid in Mr. Robins's system. Based on his review of the medical records, Dr. Walton was of the opinion that had cardiology been called on the first day, the outcome for Mr. Robins could have been "far different."

On cross-examination, Dr. Walton stated that Mr. Robins exhibited symptoms that were not consistent with CHF, such as coughing and the production of yellow sputum. He also stated that some of Mr. Robins's symptoms, which could have been indicative of CHF, could also have indicated a viral infection. He also noted from the records that Dr. Broussard was not only treating Mr. Robins for CHF, but for pneumonia as well, and considered the possibility of pneumonia serious enough to consult a pulmonary critical care doctor before a cardiologist. Dr. Walton acknowledged that the MRP was of the opinion that Mr. Robins suffered a worsening pulmonary edema leading to respiratory failure, but the MRP could not say whether this caused Mr. Robins's cardiac arrest. Dr. Walton further explained that while the chest x-ray was consistent with CHF, he could not say if it was in fact CHF.

The plaintiffs allege that the trial court committed manifest error in stating that Dr. Walton testified that both he and the panel were "wrong" in concluding that the defendants violated applicable medical standards of care if Mr. Robins was diagnosed with either pneumonia or ARDS. The defendants are clearly referring to the following statement by the trial court:

> And one of the last things Dr. Walton said that I had in my notes that I thought was very telling: If Mr. Robins had pneumonia or ARDS, then the medical opinion—the [MRP] opinion is wrong.

We cannot find in Dr. Walton's testimony a claim that the opinion of the MRP would be "wrong" if Mr. Robins had pneumonia or ARDS; therefore, if the trial court's above words are taken in their natural context, such an assertion would be incorrect. On cross-examination, the following exchange took place:

> Q: But if, in fact, what [Mr. Robins] had was pneumonia and ARDS, then [the MRP's] opinions would be incorrect; wouldn't they?
>
> A: I think a person can have more than one medical condition. I think a person can have an underlying cardio—a pulmonary issue like pneumonia but also have concomitant [CHF]. I don't think it's a either/or. And I think critical care experts would agree with me, you can have a condition where someone's is [sic] in full pulmonary edema, [CHF], and that direct damage to the lungs can cause secondary ARDS. So, it's not [an] either/or. It can be a both/and.

This testimony of Dr. Walton indicates that the MRP's opinion would not be wrong if Mr. Robins had pneumonia or ARDS, because he could also have had CHF at the same time. However, when we review the full breadth of Dr. Walton's testimony with respect to the trial court's factual findings, we still cannot say the trial court was clearly wrong. Dr. Walton also admitted that Mr. Robins was exhibiting symptoms of both CHF and pneumonia/ARDS, but could not say which condition, if either, directly caused Mr. Robins's cardiac arrest which led directly to his hypoxic brain injury.

The trial court also heard testimony from Dr. Phillip Dellinger, who is board certified in internal medicine, pulmonary disease, and critical care. Dellinger also reviewed Mr. Robins's medical records, and he concluded that the defendants did not breach their standard of care. His findings on the chest x-ray was that it was not compatible with heart failure, noting the apparent symptoms of a pulmonary infection. Dr. Dellinger also stated that while treatment for pneumonia was continued, Mr. Robins's cardiac conditions were still monitored to detect any complications. He also noted that Mr. Robins's oxygen requirements had decreased.

Dr. Pearson testified at trial that he continued the treatment plan started by Dr. Pirzadah. Upon his examination of Mr. Robins, his condition had improved from the condition presented in the chest x-ray. He had also found that the chest x-ray showed less of a chance of heart failure. He stated that since the x-ray showed no pleural fluid developing, Mr. Robins's diagnosis was more likely pulmonary edema, ARDS, or extensive pneumonia. Also, Dr. Pearson testified that Mr. Robins was receiving treatment to improve his oxygenation, and that if Mr. Robins had CHF, his condition should have improved under that treatment. Due to Mr. Robins's condition stabilizing, Dr. Pearson initially did not see a reason to move him to the ICU.

Malpractice claims are subject to the general rules of proof applicable to any negligence action: the plaintiff must prove a standard of care, a breach of that standard, causation, and damages. *Richard v. Parish Anesthesia Associates, Ltd.*, 2012-0513 (La. App. 4 Cir. 12/14/12), 106 So.3d 730, 734, writ denied, 2013-0116 (La. 3/1/13), 108 So.3d 1179. In the instant case, the trial court determined that the plaintiffs established the applicable standard of care that the defendants had to

8

follow, but that they did not prove that the defendants had breached the standard of care.

Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently. *Hall v. Folger Coffee Co.*, 2003-1734 (La. 4/14/04), 874 So.2d 90, 99. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 883 (La. 1993). In the instant case, we find that the record contains sufficient evidence and testimony to support the trial court's conclusion that the defendants did not breach their standard of care, and we therefore find the trial court was not manifestly erroneous in its verdict.

In their second assignment of error, the plaintiffs claim that the trial court erred by not applying the "adverse presumption" rule against Dr. Pirzadah, who did not appear for the trial.

On the first day of the trial, counsel for the defendants informed the trial court that Dr. Pirzadah was absent due to his son being in a severe automobile accident in St. Louis. Neither the plaintiffs nor the trial court commented on the matter. At the end of the second day of the trial, counsel for the defendants stated that she was unsure if Dr. Pirzadah would be available for the next day, and again neither the plaintiffs nor the trial court offered any comment. On the third day of the trial, the defendants rested without calling Dr. Pirzadah. In their closing argument, the plaintiffs first raised the issue of adverse presumption with regard to Dr. Pirzadah's absence, stating they had received information that Dr. Pirzadah was not in St. Louis tending to his son, but was working at OLOL. The plaintiffs argued that since Dr. Pirzadah was actually available for trial but refused to appear,

it could be presumed that the testimony he would have given would have been adverse to his position.

In its oral reasons, the trial court stated that it had received "real" information at the start of the trial that Dr. Pirzadah's son had been involved in an accident, which was the reason for Dr. Pirzadah's absence.[1] The trial court noted that the defendants chose not to file a motion for a continuance, and instead proceeded with the trial. The trial court then distinguished this information from the contention in the plaintiffs' closing argument that, through a phone call, the plaintiffs discovered that Dr. Pirzadah was at OLOL. The trial court stated it had no way of verifying the plaintiffs' contention. Further, the trial court noted that neither the plaintiffs nor the defendants made an effort to subpoena Dr. Pirzadah if they felt his testimony would have been essential.

The appellate standard of review for a trial court's decision of whether an adverse presumption should be imposed is whether the trial court abused its discretion. *BancorpSouth Bank v. Kleinpeter Trace, L.L.C.*, 2013-1396 (La. App. 1 Cir. 10/1/14), 155 So.3d 614, 640, <u>writ denied</u>, 2014-2470 (La. 2/27/15), 159 So.3d 1067. An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. *Driscoll v. Stucker*, 2004-0589 (La. 1/19/05), 893 So.2d 32, 47.

The evidentiary doctrine of "adverse presumption" was applied by the Louisiana Supreme Court as early as 1910 in *Varnado v. Banner Cotton Oil Co.*, 126 La. 590, 590-592, 52 So. 777, 777-778 (1910), wherein the Court applied the maxim *"omnia praesumuntur contra spoliatorem,"* holding that the refusal of the

---

[1] The trial court erroneously stated that Dr. Pirzadah's daughter had been in an accident.

managers of a corporation to produce the corporate books to interested stockholders justified a court and jury to draw "the most unfavorable inference, consistent with reason and probability, as to the nature and effect of the evidence which the opposite party has been precluded from using and examining as a means for the discovery of the truth."

Thus, as previously recognized by this court, when a litigant fails to produce evidence within his reach, a presumption that the evidence would have been detrimental to his case is applied, unless the failure to produce the evidence is adequately explained. *BancorpSouth Bank*, 155 So.3d at 639-40. Such a circumstance is not present in the instant case. Regardless of where Dr. Pirzadah was at the time of the trial, he was duly accessible prior to the trial, and the failure of his being deposed or subpoenaed to testify is attributable equally to the plaintiffs and defendants.[2] Moreover, the trial court was satisfied with the defendants' explanation for Dr. Pirzadah's absence, and we find no abuse in the trial court's discretion to deny the imposition of the theory of adverse presumption against Dr. Pirzadah.

## DECREE

The judgment of the Nineteenth Judicial District Court in favor of the defendants/appellees, Mohammad Z. Pirzadah, M.D. and Charles L. Pearson, Jr., M.D., dismissing with prejudice the petition for damages filed by the plaintiffs/appellants, Douglas and Katherine Robins, is affirmed. All costs for this appeal are assessed to the plaintiffs/appellants.

**AFFIRMED.**

---

[2] The defendants noted in their brief that Dr. Pirzadah had never been deposed prior to the trial. Likewise, we find no evidence of any such deposition in the record.