Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,708-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

QUENTIN THOMAS HENRY, ET AL            Plaintiffs-Appellants

versus

GREATER OUACHITA WATER COMPANY      Defendant-Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20152305

Honorable Daniel J. Ellender, Judge

* * * * *

OFFICE OF ANTHONY J. BRUSCATO            Counsel for Appellants
By: Anthony J. Bruscato


GEIGER, LABORDE & LAPEROUSE, LLC        Counsel for Appellee,
By: Ernest P. Gieger, Jr.                Greater Ouachita Water
    Nicholas S. Bergeron                 Company
    John E. W. Baay, II
    J. Michael DiGiglia


STEWART LAW GROUP, LLC
By: Arthur Lane Stewart


BREITHAUPT, DUNN, DUBOS, SHAFTO
& WOLLESON, LLC
By: Michael Lee Dubos
    Jared S. Scheinuk

PHELPS DUNBAR, LLP                     Counsel for Appellee,
By: Steven J. Levine                          Inframark, LLC
    J. Alan Harrell
    David J. Topping


* * * * *


Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J**.

This appeal arises from the Fourth Judicial District Court, Ouachita Parish, the Honorable Daniel Ellender presiding. Plaintiffs appeal two judgments of the trial court which together dismissed the claims of over 1,000 mass tort plaintiffs for failing to comply with discovery orders. For the following reasons, the judgments are affirmed.

## FACTS

The trial court rendered two judgments, dated July 13, 2021, and November 8, 2021, dismissing the claims of 1,063 plaintiffs (collectively, "appellants" or "plaintiffs") filed against Greater Ouachita Water Company ("GOWC") and Inframark, LLC ("Inframark") (collectively, "appellees" or "defendants") due to plaintiffs' missing numerous discovery deadlines and violating discovery orders. Plaintiffs are contract customers of Defendants or household members living in the homes with which GOWC contracted to provide service.

Suit was originally filed on August 4, 2015, by 19 plaintiffs who alleged that they (or their property) were damaged or inconvenienced by contaminated water supplied by GOWC. Following additional amended petitions over the course of the following two years adding 5,665 plaintiffs, the final plaintiff count stood at 5,684. In 2018, plaintiffs filed an amended petition adding Inframark as a defendant, claiming that it had a management agreement with GOWC regarding the operation of its water system. GOWC and Inframark filed separate answers to plaintiffs' multiple petitions. Once the number of plaintiffs grew large, the parties reached an agreement regarding discovery whereby plaintiffs would use an online accessible "Plaintiff Fact Sheet/Database" (the "Database"), which contained a defined

list of questions and requests to upload documents for each plaintiff to answer.

On December 14, 2018, the trial court signed a scheduling order requiring all plaintiffs' discovery responses be entered into the Database, in staggered intervals, no later than August 15, 2019. The order provided a process by which the parties could resolve any deficiencies in plaintiffs' discovery responses. The order also allowed defendants to file motions to compel for plaintiffs that were nonresponsive to discovery requests and plaintiffs were ordered to correct any deficiencies within 30 days from the trial court's ruling. Defendants were permitted to file motions to dismiss those plaintiffs whose discovery responses remained incomplete or nonresponsive within 30 days of the deadline to correct as ordered by the trial court on any motion to compel.

August 15, 2019, passed and 5,238 plaintiffs out of 5,684 had not entered any information at all into the Database. On December 13, 2019, GOWC and Inframark filed their first motion to compel as to the wholly nonresponsive plaintiffs. In their motion, defendants stated that they notified plaintiffs of deficient or missing discovery responses on September 13, 2018. On October 11, 2018, plaintiffs' counsel responded and detailed their unsuccessful efforts to reach various plaintiffs to complete discovery. The defendants asserted that over 90% of plaintiffs had not complied with the scheduling order by completing any part of the plaintiff fact sheets.

Plaintiffs opposed defendants' first motion to compel, stating that the Database was "unworkable." Plaintiffs' counsel asserted that their staff spent "more than one thousand hours" trying to upload plaintiffs' data into the computer system without success. Plaintiffs attached to their opposition

2

the affidavits of two staff workers employed by plaintiffs' counsel detailing the limitations of the Database. In particular, the affidavits described a problem with the Database where plaintiffs were required to provide their addresses from 2005 to present, and plaintiffs could not move beyond that screen without providing every address for that time period.

Defendants filed a reply brief in support of their first motion to compel, stating that the first they heard of any deficiencies in the Database was when plaintiffs referenced them in their opposition. Defendants argued that at one time plaintiffs followed the protocol of contacting the database developer to address any issues that arose, but that they had not done so since November 4, 2019.

On January 31, 2020, plaintiffs filed their own motion to compel, claiming that GOWC engaged in "classic discovery abuse by dumping literally tens of thousands of pages of documents on plaintiffs without an adequate index or identifying information." Plaintiffs asked that the trial court order defendants to produce a narrative answer to each interrogatory propounded by plaintiffs and include an index for the documents already provided to plaintiffs.

GOWC opposed plaintiffs' motion to compel, arguing that plaintiffs had repeatedly propounded additional discovery requests upon it, making it necessary for GOWC to continuously supplement its responses to interrogatories and requests for admission. GOWC stated that plaintiffs' interrogatories were often broadly worded and included requests for documents transmitted to various government agencies over a 15-year period. GOWC contended that it had Bates-stamped the documents it

provided to plaintiffs, and often directed plaintiffs to particular Bates-numbered pages or a range of pages.

On February 14, 2020, defendants filed a second motion to compel wherein they sought to compel partially responsive plaintiffs to complete and correct their discovery responses within 30 days of the ruling on the second motion to compel. Defendants stated that the plaintiffs that were the subject of their second motion to compel provided deficient entries on the Database and were notified that they needed to correct the deficiencies, but that they had not complied with the deadlines established in the trial court's scheduling order.

The trial court held a hearing on the defendants' first motion to compel on February 19, 2020. The trial court noted that the Database was in place for almost two years by the time of the hearing and that the first time that plaintiffs' counsel informed the trial court that the database was faulty was at the hearing.

On March 17, 2020, the trial court issued an order on both defendants' and plaintiffs' motions to compel, which it subsequently amended in a superseding order dated June 1, 2020. The amended order: (1) granted defendants' first motion to compel and dismissed with prejudice 3,671 plaintiffs who had not entered any information into the Database; (2) granted in part and denied in part plaintiffs' motion to compel; (3) directed plaintiffs to amend their petition to reflect that plaintiffs' claims do not predate January 1, 2012; and (4) ordered that discovery would proceed in written form and that plaintiffs must answer discovery by May 15, 2020.[1]

---

[1] Plaintiffs filed a notice of intent and request for a return date with the trial court in order to seek supervisory review of the trial court's March 17, 2020, order, and June 1, 2020, amended order. Plaintiffs, however, did not file a writ with this court.

4

On June 5, 2020, plaintiffs filed a motion to reconsider or to amend the judgment on their motion to compel. GOWC opposed the motion. On August 14, 2020, plaintiffs filed a motion for an extension of time to answer discovery seeking an additional 90 days to respond. Defendants opposed the motion. Then, on October 12, 2020, the trial court entered an order denying plaintiffs' motion to reconsider or amend its prior order.

The trial court also granted in part and denied in part plaintiffs' request for an extension of time to answer discovery, ordering: (1) plaintiffs to provide defendants, by October 30, 2020, with a list of those plaintiffs that had not completed any form of discovery and those who were non-communicative with plaintiffs' counsel; (2) defendants to submit a judgment of dismissal with prejudice of those same plaintiffs; (3) plaintiffs to submit, by November 30, 2020, draft interrogatory responses from plaintiffs who had not yet submitted interrogatory responses; and (4) the remaining plaintiffs to provide defendants with completed, final, verified responses to requests for production of documents by December 31, 2020.

On November 5, 2020, the trial court rendered an order dismissing 74 plaintiffs who had not completed any form of discovery response and whom plaintiffs' counsel were unable to communicate with despite their best efforts, as detailed in the trial court's October 12, 2020, ruling.

December 31, 2020, passed and plaintiffs still had not provided any final, verified interrogatory responses or final responses to requests for production since the trial court's October 12, 2020, judgment, prompting defendants to file their third motion to compel on January 12, 2021. In their motion, defendants sought to have those plaintiffs that still had not provided verified, complete responses to interrogatories and requests for production of

documents dismissed with prejudice. Plaintiffs opposed defendants' third motion to compel.

On April 15, 2021, the trial court granted defendants' third motion to compel. The trial court's ruling dismissed with prejudice 704 plaintiffs who did not provide draft interrogatory responses to defendants by November 30, 2020, and who did not provide produce final, verified discovery responses by April 1, 2021. The trial court's ruling further ordered the remaining plaintiffs (other than the 58 who produced final, verified discovery responses on March 31, 2021) to produce final, verified discovery responses along with all responsive documents by April 30, 2021. Plaintiffs were warned that those who failed to comply would be dismissed with prejudice. The trial court set a hearing date of May 11, 2021, to address those plaintiffs who did not comply with the April 30, 2021, deadline.

On May 27, 2021, the trial court signed a judgment related to defendants' third motion to compel. That judgment dismissed all remaining plaintiffs who did not submit to defendants signed and notarized affidavits dated on or before April 30, 2021. The trial court reserved the dismissals pending a hearing set for June 18, 2021.

In anticipation of the hearing, defendants filed a memorandum on June 1, 2021, arguing that the only plaintiffs whose claims should not be dismissed for failing to comply with the trial court's discovery orders requiring final, verified discovery responses were the 57 plaintiffs who provided such responses by March 31, 2021. Defendants further argued that the approximately 857 plaintiffs who provided verification affidavits dated April 30, 2021, or earlier should be dismissed, "because the affidavits that plaintiffs now intend for defendants to match up with prior draft Excel

6

interrogatory responses are insufficient and lack any responses to requests for production." Defendants stated that each affidavit submitted by the 857 plaintiffs they referenced attested that each particular plaintiff had "read the foregoing answers to interrogatories and requests for production of documents," but that no such discovery responses were attached to the affidavits. Rather, plaintiffs' counsel intended for defendants to match each affidavit to draft interrogatory responses contained in an Excel spreadsheet. Finally, defendants argued that many of the affidavits were defective.

On June 10, 2021, plaintiffs filed a memorandum in opposition wherein they reiterated their complaints about defendants' responses to plaintiffs' discovery requests. Plaintiffs argued the so-called "rough draft" discovery responses included those that defendants flagged as deficient, but plaintiffs did not necessarily agree that those responses were deficient. Plaintiffs stated that due to the COVID pandemic they provided the discovery responses in an Excel spreadsheet instead of as a hard copy. Finally, plaintiffs disputed defendants' claims that the affidavits were deficient.

On June 17, 2021, plaintiffs filed a motion for permission to offer evidence for the trial court to consider at the June 18, 2021, hearing, which included affidavits and/or testimony about the allegedly contaminated water supplied by GOWC. At the hearing, the trial court stated that it would allow plaintiffs to proffer the additional evidence, but that the court would not consider it.

On July 13, 2021, the trial court entered an order finding that 760 plaintiffs had not: (a) provided final, verified interrogatory responses or responses to requests for production of documents to defendants by April 30,

2021; and (b) had not provided notarized affidavits dated on or before April 30, 2021, related to the 2020 draft interrogatory responses. Those plaintiffs were dismissed with prejudice. All remaining plaintiffs (except the 57 that produced final, verified discovery on March 31, 2021) were ordered to produce to defendants by July 30, 2021, final, verified discovery responses in the same format that the 57 plaintiffs produced on March 31, 2021. Those plaintiffs that did not do so would be dismissed with prejudice. Finally, the trial court ordered plaintiffs to pay $10,000 ($5,000 per defendant) in fees and costs associated with granting defendants' third motion to compel.

On July 21, 2021, plaintiffs filed a motion for new trial asking that the claims of the 760 dismissed plaintiffs be reinstated. The trial court denied the motion. On September 30, 2021, the trial court issued an order setting an October 29, 2021, hearing for a determination of whether the remaining plaintiffs adequately complied with the July 13, 2021, judgment, and, if not, which plaintiffs were subject to dismissal with prejudice.

On November 8, 2021, the trial court issued a judgment in which it dismissed with prejudice the claims of 307 plaintiffs who "failed to provide final, verified interrogatory responses and responses to requests for production, along with responsive documents, in the same format as the … 57 produced on March 31, [2021], by July 30, 2021, as previously ordered." The trial court further dismissed with prejudice the claims of 419 plaintiffs who "failed to provide substantive responses to requests for production of documents, as previously ordered, and instead responded 'N/A' to every request for production of documents; notwithstanding the fact that a significant portion of the requests … actually apply to them."

8

Plaintiffs now appeal the July 13, 2021, and November 8, 2021, judgments.

## DISCUSSION

Appellants argue that the trial court impermissibly dismissed the claims of over 1,000 plaintiffs for insufficient discovery responses when GOWC was permitted to propound 178 interrogatories and 85 requests for production. Appellants state that each plaintiff who was dismissed provided answers in an online format and signed a verification attesting to the accuracy of the answers. Appellants aver that each of the dismissed plaintiffs signed releases authorizing GOWC to obtain their medical, social security, and employment records.

Appellants state that there is no evidence that any individual plaintiff was dilatory or at fault in responding to discovery, and that the only evidence of fault is that of plaintiffs' counsel. Appellants assert that the trial court abused its discretion in dismissing those plaintiffs' claims.

Appellants further argue that the only defendant that propounded discovery was GOWC; however, the trial court dismissed plaintiffs' claims against Inframark. Plaintiffs state that Inframark did not propound discovery and has no standing to complain about any "perceived deficiencies" in plaintiffs' discovery responses.

Lastly, appellants argue that GOWC was allowed to respond to their discovery requests with a "document dump" consisting of 31,964 Bates-stamped PDF pages and 248 boxes of documents in lieu of traditional discovery responses. Appellants ask that the trial court's rulings be reversed and the case remanded for a trial on the merits.

Appellees argue that plaintiffs' repeated noncompliance with discovery orders over the course of nearly three years warranted dismissal with prejudice. Appellees contend that the trial court's two earlier judgments informed plaintiffs that failing to produce complete, verified discovery responses by certain dates would result in dismissal. Appellees assert that plaintiffs cite no authority that precludes dismissal of their claims against all defendants for violating court-ordered discovery related to discovery requests originally propounded by one defendant, GOWC, when the responses apply equally to both defendants. Appellees also argue that GOWC and Inframark jointly filed motions to compel, participated in each hearing, and were part of each judgment, without any corresponding objection from plaintiffs.

Finally, appellees aver that plaintiffs' brief addresses issues that either are not relevant to the issues appealed or were not raised with the trial court and should thus be disregarded. Appellees seek a ruling from this Court affirming the trial court's judgments.

It is well settled that a trial court is vested with inherent power to maintain control of its docket. *Boykins v. Boykins*, 04-0999, p. 5 (La. App. 4 Cir. 4/24/07), 958 So. 2d 70, 74, *writ denied*, 07-1302 (La. 9/28/07), 964 So. 2d 369 ("A trial judge has wide discretion in controlling his docket"). This court has likewise recognized a trial court's vast discretion with respect to imposing sanctions for failure to comply with discovery orders. *Wells v. State, Dep't of Pub. Safety & Corr.*, 41,836, p. 3 (La. App. 2 Cir. 3/7/07), 954 So. 2d 234, 236 ("The trial court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discretion"). Generally, an abuse of discretion results

from a conclusion reached capriciously or in an arbitrary manner. *Jones v. LSU/EA Conway Med. Ctr.*, 45,410 (La. App. 2 Cir. 8/11/10), 46 So. 3d 205. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. *Id.* A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Id.*

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. La. C.C.P. art. 1422. To this end, GOWC sought to discover the factual basis and evidentiary support for plaintiffs' contaminated water claims; i.e., that plaintiffs and/or their property were damaged by contaminated water supplied to their homes and businesses by GOWC.

Where a party fails to answer an interrogatory or respond to a request for production, a trial court may issue an order compelling discovery on the motion of a party. La. C.C.P. art. 1469(2). For these purposes, an evasive or incomplete answer is to be treated as a failure to answer. La. C.C.P. art. 1469(3). Thereafter, where a party fails to obey a trial court order compelling discovery, the trial court may make such orders in regard to the failure as are just, including any of the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

11

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a final default judgment against the disobedient party upon presentation of proof as required by Article 1702.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Subparagraphs (1), (2), and (3) of this Paragraph, unless the party failing to comply shows that he is unable to produce such person for examination.

La. C.C.P. art. 1471(A).

There is a distinction between the sanctions available for failure to comply with discovery and the sanctions available for disobedience of court-ordered discovery. *Alcorn v. Duncan*, 49,964 (La. App. 2 Cir. 8/26/15), 175 So. 3d 1014, *writ denied*, 15-1929 (La. 11/20/15), 180 So. 3d 1288. A party may seek a court order compelling a response to discovery under La. C.C.P. art. 1469, and if the order is granted, the mover may recover the reasonable costs and attorney fees incurred in obtaining the order. La. C.C.P. art. 1469(A)(4). However, if a party fails to obey such an order by the trial court to provide or permit discovery, the trial court may impose the more severe sanctions set forth in La. C.C.P. art. 1471. By its express terms, La. C.C.P. art. 1471 grants these remedies only when a trial court order compelling discovery is in effect and a party has failed to obey the order. *BancorpSouth Bank v. Kleinpeter Trace, L.L.C.*, 13-1396 (La. App. 1 Cir. 10/1/14), 155 So. 3d 614, *writ denied*, 14-2470 (La. 2/27/15), 159 So. 3d 1067. Criteria to be considered in imposing sanctions under La. C.C.P. art. 1471 are the prejudice to the other party and the willfulness of the disobedient party. *Horton v. McCary*, 93-2315 (La. 4/11/94), 635 So.2d 199, 204.

Dismissal is a sanction of last resort only to be imposed where a party has failed to comply with a court order of discovery and only after an opportunity to be heard has been afforded the litigant. *Hutchinson v. Westport Ins. Corp.*, 04-1592 (La. 11/8/04), 886 So. 2d 438. Before taking the drastic action of dismissal for violation of a discovery order, a trial court should consider the following four factors: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. *BancorpSouth Bank v. Kleinpeter Trace, L.L.C., supra*.

Plaintiffs' contemptuous failure to comply with the court-ordered discovery falls squarely into the mandates of Article 1471 as a "fail[ure] to obey an order to provide or permit discovery." La. C.C.P. art. 1471. Likewise, the Louisiana Supreme Court has held that "[l]itigants cannot refuse to make a good faith effort to respond to discovery; if they do[,] they run the risk of incurring sanctions, up to and including dismissal and default." *Hutchinson, supra* at p.4, 886 So.2d at 441. Accordingly, the trial court's dismissal of the noncompliant plaintiffs was a remedy available to the trial court pursuant to the plain language of La. C.C.P. art. 1471(A)(3).

The discovery at issue in this case was initially propounded on November 11, 2016, and the Database became available for plaintiffs' counsel staff to use on March 7, 2018. Despite numerous attempts over the course of three years to obtain the information sought, which information concerned the essential elements of their claim, plaintiffs' responses were either wholly absent or only partially complete. At the time of the July 13,

13

2021, and November 8, 2021, judgments, plaintiffs had either not responded at all or provided incomplete responses on the Database that had been available to them since March 7, 2018.

Although dismissal was the harshest sanction available to the trial court for plaintiffs' failure to comply with its order compelling discovery, most of the less-severe alternatives available under La. C.C.P. art. 1471 would have yielded essentially the same result. For instance, the trial court could have chosen to order that certain facts relating to plaintiffs' contaminated water claims were established as proven for purposes of the litigation in GOWC's favor (La. C.C.P. art. 1471(A)(1)); it could have prohibited plaintiffs from presenting evidence in support of their contaminated water claims (La. C.C.P. art. 1471(A)(2)); or it could have chosen to strike their allegations of contaminated water from the pleadings (La. C.C.P. art. 1471(A)(3)). However, any of these sanctions, if imposed by the trial court, would ultimately result in the dismissal of plaintiffs' claims, since plaintiffs' claims of damage caused by a contaminated water supply were the central issue before the court.

Although the trial court could have chosen the least severe sanctions, such as staying the action pending compliance with its discovery order (La. C.C.P. art. 1471(A)(3)) or treating plaintiffs' failure to comply with the discovery order as contempt of court (La. C.C.P. art. 1471(A)(4)), these remedies would not have been adequate. The Louisiana Supreme Court has held that refusal to comply with court-ordered discovery is a serious matter, and trial courts must have severe sanctions available to deter litigants from flouting discovery orders. *Horton v. McCary*, *supra*.

14

When a party has been given sufficient notice and opportunity to be heard prior to the imposition of a penalty, the sanction of dismissal may be within the bounds of the trial court's discretion. *Henson v. Copeland*, 451 So. 2d 41 (La. App. 2 Cir. 1984). In this case, the record reveals that appellants were given more than sufficient notice and opportunity to be heard prior to their dismissal. As detailed above, the trial court gave appellants multiple chances to comply with its discovery orders, yet appellants either did nothing or very little.

In *Murungi v. Touro Infirmary*, 12-0213 (La. App. 4 Cir. 3/1/13), 110 So. 3d 1250, the court found that the trial court did not abuse its discretion in dismissing an action as a discovery sanction for the plaintiff's pattern of willful refusal to timely and adequately respond to discovery requests and after previous motions to compel had been granted and the court had warned the plaintiff of the consequences of failing to respond, including dismissal.

Similarly, in *Wilson v. Brown Brother*, 42,748 (La. App. 2 Cir. 12/5/07), 973 So. 2d 132, this court affirmed the trial court's dismissal of the plaintiff's claim after plaintiff repeatedly failed to respond to discovery requests and comply with the trial court's orders regarding discovery. See also *Medical Review Panel Proceedings of Peter v. Touro Infirmary*, 05-0317 (La. App. 4 Cir. 7/6/05), 913 So. 2d 131, *writ denied,* 05-2077 (La. 2/10/06), 924 So. 2d 170 (trial court did not abuse its discretion in dismissing action for failure to comply with discovery order compelling answers to interrogatories when order specified that noncompliance would result in dismissal); and *Rice v. Sagrera*, 95-155 (La. App. 3 Cir. 5/31/95), 657 So. 2d 419, *writ denied*, 95-1657 (La. 10/6/95), 661 So. 2d 470

(dismissal was the appropriate sanction for repeated failure of plaintiff to comply with court order to respond to discovery requests).

In this case, without cause or justification, and despite multiple court orders, plaintiffs willfully failed to comply with court-ordered discovery. Plaintiffs had years to comply with discovery and refused. The record is devoid of any evidence that the dismissed plaintiffs made good faith efforts to comply with the trial court's orders regarding discovery. Instead, the record reflects a silent refusal on their part to even attempt adequate discovery responses.

Plaintiffs' refusal to provide the most basic information about their claim renders the opposing parties unable to value the case or prepare for trial. Dismissal is appropriate. There is no other adequate remedy in this case. The record supports a conclusion that plaintiffs' failure to comply with discovery was willful. We cannot say that the trial court abused its discretion in dismissing these plaintiffs. If a trial court may not dismiss a case with prejudice under circumstances involving as much prolonged willful disobedience as exists in this case, then discovery rules and court-orders enforcing them are meaningless.

The remaining issues raised in appellants' appeal were not raised at the trial court and thus are not properly before this Court. *Knowles v. Knowles*, 51,872 (La. App. 2 Cir. 2/28/18), 246 So. 3d 758, 765 ("This court will not consider an issue raised for the first time on appeal").

## CONCLUSION

For the foregoing reasons, we affirm. The costs of the appeal are assessed to Appellants.

**AFFIRMED.**

16